[Crim. No. 3070.  In Bank.—April 6, 1928.]

THE PEOPLE, etc., Respondent, v. WILLIAM M. MOUSE, Appellant.

Catherine A. McKenna and J. Irving McKenna for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

PRESTON, J.—Defendant was convicted of two felonies of the same class on verdicts simultaneously rendered. Judgment was imposed upon him for both offenses; the sentences,

under section 669 of the Penal Code, would run consecutively. He then moved for a new trial and in arrest of judgment, both of which motions were denied, and he has appealed from said judgments and from the orders denying his said motions.

The record presents solely the question of state jurisdiction over the offenses charged. Admittedly one of them, and a fair construction of the evidence shows that the other also was committed upon the grounds and property in Los Angeles County known as the National Home for Disabled Volunteer Soldiers at Sawtelle, California. Deeds to the property were admitted in evidence naming the grantee as the "National Home for Disabled Volunteer Soldiers, a corporation formed and now existing under the laws of the United States." The nature of this institution and the manner in which it is governed, maintained and supported may be well described in the language of the case of *Sinks* v. *Reese*, 19 Ohio St. 306, 313, 314 [2 Am. Rep. 397]:

"And first, as to the character, in law, of the institution. It was established under and in conformity to the provisions of the act of the congress of the United States of March 21, 1866, entitled 'An act to amend an act entitled an act to incorporate a national military and naval asylum for the relief of the totally disabled officers and men of the volunteer forces of the United States.'

"The first three sections of the act [24 U. S. C. A., secs. 71, 73, 74, 77], provide for 'an establishment for the care and relief of the disabled volunteers of the United States army, to be known by the name and style of the national asylum for disabled volunteer soldiers,' with a board of managers, consisting of the president of the United States, secretary of war, chief justice of the United States, for the time being, together with nine others, no two of whom shall be residents of the same state, to be appointed by joint resolution of the two houses of congress, to have perpetual succession, with power to take, hold, and convey real and personal property, establish a common seal, and to sue and be sued in courts of law and equity; and to make by-laws, rules, and regulations for carrying on the business and government of the asylum, and affix penalties thereto. The fourth section confers power on the board of managers

to procure sites and to have necessary buildings erected thereon of sufficient capacity to accommodate the persons to be provided for. The fifth section appropriates various forfeited and unclaimed funds in the treasury of the United States to the support of the asylum, and authorizes the acceptance of donations for its benefit. The ninth section provides, 'that all inmates of the asylum shall be, and they are hereby, made subject to the rules and articles of war, and will be governed thereby, in the same manner as if they were in the army of the United States.' And the thirteenth and last section provides, 'that congress may at any time hereafter alter, amend, or repeal this act.' "

Exclusive jurisdiction in the United States to punish criminal offenses exists in at least two classes of cases, to wit: First, offenses committed in "all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." (Art. I, sec. 8, Const. of the United States.) And, second, offenses committed in places over which exclusive jurisdiction has been expressly ceded by the state legislature (*United States* v. *Tucker*, 122 Fed. 518). This subject has had consideration by the United States circuit court of appeals in the very recent case of *Williams* v. *Arlington Hotel Co.*, 22 Fed. (2d) 669, 670, where in our opinion it is completely covered as follows: "We think the trial court was in error under the authority of the three so-called Leavenworth reservation cases (*Ft. Leavenworth Railroad Co.* v. *Lowe*, 114 U. S. 525 [29 L. Ed. 264, 5 Sup. Ct. Rep. 995]; *Chicago, R. I. & P. R. Co.* v. *McGlinn*, 114 U. S. 542 [29 L. Ed. 270, 5 Sup. Ct. Rep. 1005], and *Benson* v. *United States*, 146 U. S. 325 [36 L. Ed. 991, 13 Sup. Ct. Rep. 60, see, also, Rose's U. S. Notes]). In the first of these cases, Mr. Justice Field sets out that there are three ways in which the United States can acquire or hold land within the limits of a state. The first of these ways is in accordance with article I, section 8, of the constitution, where a cession is made by the state of land for governmental purposes defined in that section; the second is by purchase or condemnation of land belonging to a private party; the third is by having public land at the time of the admission of the state into the Union. The opinion declares that the manner of acquiring the land has con-

trolling effect upon the political control and the sovereign jurisdiction of the government. The rule is that if the cession is made under the above provision of the constitution, the jurisdiction of the United States is exclusive; that if the land is acquired or held in any other way, the United States holds merely as a proprietor and the jurisdiction of the state is complete, except that it cannot interfere with the use of the land for governmental purposes; that, if the land is not acquired under the above constitutional provision, the state may cede such jurisdiction as it sees fit to the government and that the extent of the jurisdiction of the government depends upon the terms of such cession.'' See, also, *People* v. *Hillman*, 246 N. Y. 467 [159 N. E. 400, 402].

If then, the offenses here charged were committed on property of the United States being used for ''forts, magazines, arsenals, dockyards'' or ''other needful buildings,'' such property was under the exclusive jurisdiction of the United States under said provision of the United States constitution above set forth. It has been expressly decided that a soldiers' home of the type here found is such ''needful building'' (*Sinks* v. *Reese, supra,* at pp. 313, 319; see, also, *Foley* v. *Shriver,* 81 Va. 568; *Ft. Leavenworth R. R. Co.* v. *Lowe,* 114 U. S. 525 [29 L. Ed. 264, 5 Sup. Ct. Rep. 995], and sec. 15, subd. 3, title 18, U. S. Code Annotated).

This statement, of course, presupposes the consent of the state legislature, which in California, if not previously given, was certainly conferred by the act of 1897 (Stats. 1897, p. 51) which reads: ''Section 1: The state of California hereby cedes to the United States of America exclusive jurisdiction over all lands within the state now held, occupied, or reserved by the government of the United States for military purposes or defense, or which may hereafter be ceded or conveyed to the said United States for such purposes; provided, that a sufficient description by metes and bounds or map or plat of such lands be filed in the proper office of record in the county in which the same are situated; and provided further, that this state reserves the right to serve and execute on said lands all civil process, not incompatible with this cession, and such criminal process as may lawfully issue under the authority of this state against any person or persons charged with crimes committed without said lands. This act shall take effect immediately.''

But under the rule above announced we are not required to rely wholly upon the contention that this institution is a "needful building," for under the California statute above quoted, exclusive jurisdiction has been ceded to the United States over all grounds being used for military purposes. If then the institution in question, or the grounds in connection therewith, is being used either as a "needful building" within the meaning of said section of the constitution of the United States, or is being used for military purposes within the meaning of said act of the state of California, jurisdiction of the United States is exclusive.

We think the nature of the institution, the purpose for which and the manner in which it is maintained and the mode in which it is governed, leaves no doubt that its use is exclusively for military purposes. The fact that the deed to the property on which it stands runs to the grantee public corporation is of no significance as the said corporation is a governmental agency brought into being for the purpose of maintaining a governmental institution (*Ohio* v. *Thomas,* 173 U. S. 276 [43 L. Ed. 699, 19 Sup. Ct. Rep. 453, see, also, Rose's U. S. Notes]; *Overholser* v. *National Home,* 68 Ohio St. 236 [96 Am. St. Rep. 658, 62 L. R. A. 936, 67 N. E. 487]). The consent of the United States to the cession to it of exclusive jurisdiction over these lands will be presumed (*Ft. Leavenworth R. R. Co.* v. *Lowe, supra,* at p. 528; *United States* v. *Watkins,* 22 Fed. (2d) 437, 440).

Our attention has been directed to the case of *In re Kelly,* 71 Fed. 545, a district court opinion, where, it is contended, a different holding is found. In a large measure this statement is correct, but it is also true that the legislative authority of the state of Wisconsin did not make it plain that exclusive jurisdiction had been ceded to the government, the phrase in that act being: "That jurisdiction over the several tracts of land hereinafter mentioned be and is hereby ceded to the United States. . . . " but no words are found indicating that the cession was exclusive. This fact is relied upon in part by the court in that case, and greatly weakens the previous statements made therein which are opposed to the views here set forth. But by virtue of the express approval of the supreme court of the United States of the case of *Sinks* v. *Reese, supra,* in the case of

*Ft. Leavenworth R. R. Co.* v. *Lowe, supra,* and by reason of the plain facts of this case, we are satisfied to follow the holding made in other cases and not that made in the case of *In re Kelly, supra.*

Judgment reversed and cause remanded for a new trial as to count two and with directions to dismiss count one.

Shenk, J., Curtis, J., Langdon, J., Seawell, J., Richards, J., and Waste, C. J., concurred.