[Crim. No. 566. Fourth Dist. June 15, 1945.]

THE PEOPLE, Respondent, v. JOE BROWN, Appellant.

Harold D. Leddy for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Tom Scott, District Attorney, and Dorsett M. Phillips, Deputy District Attorney, for Respondent.

MARKS, J.—This is an appeal from a judgment and order denying defendant's motion for new trial after his conviction

of robbery and the crime denounced by section 286 of the Penal Code.

The amended information contained two counts. The first charged defendant with the crime of robbery, alleged to have been committed on December 2, 1944, in Kern County, by taking $50 from the person and possession of Joseph Nettles by means of putting him in fear. The second count charged the commission of the other crime on the same day. Two prior convictions of felonies were charged and were admitted.

The crimes were committed at Inyokern at the Naval Ordnance Training Station in Kern County. Defendant maintains that the state courts have no jurisdiction of the case because the crimes were committed on a government military reservation. (U. S. Const., art. I, § 8.)

 It is well established that the federal government may acquire property within the boundaries of a state for governmental use but, as a general rule, in order to deprive the state courts of jurisdiction over it there must be a surrender of jurisdiction by the state and an acceptance of jurisdiction by the United States. (*Fort Leavenworth R. Co.* v. *Lowe,* 114 U.S. 525 [5 S.Ct. 995, 29 L.Ed. 264] ; *United States* v. *Watkins,* 22 F.2d 437; *People* v. *Mouse,* 203 Cal. 782 [265 P. 944].) Prior to 1940 it had been held that acceptance and consent by the government will be presumed in the absence of the showing of a contrary intent. (*United States* v. *Jones,* 109 U.S. 513 [3 S.Ct. 346, 27 L.Ed. 1015].)

In 1940 the Congress amended section 520, title 34, U.S.C.A. The final paragraph of the amended section provides in part as follows:

''Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head . . . of any department . . . may, . . . accept or secure from the State in which any lands or interests . . . are situated, consent to or cession of such jurisdiction, exclusive or partial, . . . over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction . . . by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid,

it shall be conclusively presumed that no such jurisdiction has been accepted.''

In 1943, sections 110, 113, 114 and 120 of the Government Code of California were enacted. The effect of the first three sections is to cede to the United States jurisdiction over all land held, occupied or reserved by it on March 2, 1897, and to tender jurisdiction over all other such land thereafter acquired, subject to acceptance by the government and subject to certain reservations not important here. Section 120 provides as follows:

''Upon receipt of notification of the acceptance by the United States of exclusive jurisdiction over lands situated within the State of California, the Governor shall cause to be filed a true and correct copy of said notification in the office of the recorder of the county in which said lands are located and in the office of the clerk of the board of supervisors of the county in which said lands are located.''

There is nothing in the record indicating under what tenure the United States was holding or using the land in question here. What little there is indicates that the federal government had not accepted exclusive jurisdiction over it.

■ At the opening of the trial defendant moved to dismiss because of lack of jurisdiction in the state courts. During the course of the argument the deputy district attorney stated that in March, 1944, the War Department had filed with the governor a list of military installations over which the government had accepted jurisdiction; that he had a photostatic copy of this record which did not include the Naval Ordnance Training Station at Inyokern. If the deputy district attorney was mistaken in this statement the record was in court and defendant could have availed himself of it. Instead he did nothing and did not produce anything at all to support his contention of exclusive jurisdiction in the United States. Under this state of the record we must follow the provisions of section 520 of title 34, U.S.C.A., as amended, and conclusively presume that the United States has not accepted jurisdiction over the property involved and that the state courts have jurisdiction in this case. (*Johnson* v. *Morrill,* 20 Cal.2d 446 [126 P.2d 873]; *Kiker* v. *City of Philadelphia,* 346 Pa. 624 [31 A.2d 289].)

■ As the record contains nothing indicating that the superior court lacked jurisdiction, there is also a presumption of jurisdiction of the state court that comes to the support of

the judgment. (*Ex parte Hasse,* 5 Cal.App. 541 [90 P. 946].)

■ Defendant argues that the evidence shows that at the Naval Ordnance Training Station the United States maintains a police force known as the "security Police" which is a recognized civilian organization under the command of a Naval officer which is sufficient to establish acceptance of jurisdiction by the government. We are not impressed with this argument. Military police and ships' police are familiar figures along the streets and in the public places in some of our cities. No one has suggested that their presence is evidence that the federal government has assumed jurisdiction in those cities and has suspended the jurisdiction of the state courts there.

■ The jury returned a general verdict finding the defendant guilty of robbery without fixing the degree. The trial judge fixed the degree as robbery in the first degree and sentenced defendant accordingly. The attorney general concedes this to be error requiring reversal of that part of the judgment. (See Pen. Code, § 1157; *People* v. *Tognola,* 83 Cal.App. 34 [256 P. 455]; *People* v. *Machen,* 3 Cal.App.2d 499, 501 [39 P. 2d 893]; *In re Colford,* 68 Cal.App. 308 [229 P. 63].) No other questions are presented by defendant for our consideration.

The portion of the judgment pronounced on defendant under the first count of the information charging him with robbery, and the order denying his motion for new trial as to that offense, is reversed and that phase of the case is remanded to the superior court for retrial.

The portion of the judgment pronounced under the second count of the information charging defendant with violation of section 286 of the Penal Code, and the portion of the order denying his motion for new trial as to that offense are affirmed.

Barnard, P. J., and Griffin, J., concurred.