Opinion
COLE, P. J.
These four cases have been consolidated for purposes of appeal. The question common to all of them is the validity of the rules of the South Coast Air Quality Management District (SCAQMD). (The *Supp. 6 predecessor agency was the Air Pollution Control District.) (APCD.) The procedural posture of the cases is somewhat different and should be set forth before discussing the common issue.

Procedural Posture

In all four cases the defendants are roofers or roofing companies who were charged (in complaints with varying numbers of counts) with violating Health and Safety Code section 42400, which states “Any person who violates any provision of this part, or any order, rule, or regulation of the state board or of a district adopted pursuant to this part is guilty of a misdemeanor. . . .’’In the latter two numbered cases the defendants were each charged, additionally, with one count of violating Health and Safety Code section 41701 which prohibits the discharge of smoke of certain densities under certain conditions. All defendants were represented by the same counsel in the trial court, and he continues as counsel in each of these appeals.
Crim. A. No. 16274, Crim. A. No. 16275—These cases were assigned to Judge Sauer for trial on February 23 and February 22, 1978, respectively. In Crim. A. No. 16275, the docket shows that on that date the People orally moved the court to take judicial notice of the rules and regulations of the SCAQMD. The file contains written opposition by defendant Greater Homes. The matter was argued. The court denied the motion, stating that in its view the People had not shown that the rules and regulations had been published after being adopted in the same manner that they were published prior to adoption. The court stated its belief that minimal due process requirements demanded that the same notice should be given after adoption as was given before adoption. The People then announced their inability to proceed, the defendant moved for dismissal of the action, and the court granted the motion due to the People’s stated inability to proceed.
The next day, in case Crim. A. No. 16274, the same motion was made by the People before the same judge and was denied for the same reasons. The People then moved to introduce into evidence a copy of the rules (which the defendant stipulated had been adopted at some point.) Defendant objected to the introduction of the rules and the court denied their admission into evidence because it was not shown that they had been “published with the minimum due process the Court has referred to. . . .” Again, the People announced their inability to proceed, defendant moved for a dismissal and the court dismissed the action.
*Supp. 7 The People appealed in each of these two cases from the orders of dismissal.[1]
Crim. A. No. 16348—The appellant in this matter is defendant Veltri & Sons Roofing, a corporation. (Veltri.) The offenses charged in this case occurred on the premises of the Veterans Administration Hospital located at 16111 Plummer Street, Sepulveda, California. Based on this fact defendant challenged the jurisdiction of the trial court to hear the matter. The challenge to jurisdiction was denied by the court (Judge Obera) on March 8, 1978. On that same date defendant moved for a ruling that the SCAQMD rules and regulations were unconstitutional and the People moved the court to take judicial notice of them. On April 5, 1978, the court (Judge Obera) ruled that rules and regulations were constitutional, and that the court should take judicial notice of them.
The case was continued for trial to April 27, 1978. On that date it was tried by Judge Sauer who felt himself bound by Judge Obera’s rulings, despite his own rulings to the contrary in Crim. A. No. 16274 and Crim. A. No. 16275. Jury was waived, testimony taken and defendant was convicted of one count of violating Health and Safety Code section 41701 and two counts of violating Health and Safety Code section 42400. Defendant was sentenced and its appeal followed.
Crim. A. No. 16466—This case came on for trial before Judge Sauer on April 19, 1978. Four of the counts involved a charge of violating Health and Safety Code section 42400, and hence the rules and regulations of the SCAQMD. As with cases number Crim. A. No. 16274 and Crim. A. No. 16275 the People moved the court to take judicial notice of the rules and regulations, the court denied the motion for the same reasons stated in the other two cases, the People declared their inability to proceed and the court thereupon granted the defendant’s motion to dismiss these four counts. The defendant then pleaded guilty to count one (relating to Health & Saf. Code, § 41701 and not involving the issue concerning the rules and regulations) and was sentenced. This count is not involved in this appeal. The People then appealed from the order refusing to take judicial notice (see fn. 1, ante), and from the order “dismissing the case.” We treat the appeal as being from the order dismissing the four counts.

*Supp. 8
People’s Appeals

In each of the cases before us except Crim. A. No. 16348 the People have appealed. The right to appeal is strictly statutory; the circumstances in which the People may appeal to this court are set forth in Penal Code section 1466, subdivision 1.[2] The People seek to fit this appeal into the statute by arguing that the trial court’s judgment was one upon the sustaining of a demurrer, inasmuch as a demurrer in a criminal prosecution is the method which a defendant can use to challenge the constitutionality of a statute. The People then argue that the trial court’s rejection of judicial notice was not based on a failure to comply with Evidence Code section 453 (which deals with judicial notice) but rather was “based on a finding that the Rules were adopted in a constitutionally invalid manner” and therefore could not be enforced.
The argument is ingenious, but not well grounded. A demurrer is a pleading “on the part of the defendant” (Pen. Code, § 1002) which “must be put in, in open Court, either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose.” (Pen. Code, § 1003.) A demurrer must be in writing and distinctly specify the grounds of objection to the accusatory pleading.
Here no demurrers were filed. Instead, as noted above, the People, in the three cases here involved, orally moved the court at the time of trial (and supplemented the oral motions with written ones later filed) to take judicial notice of the rules and regulations and the respective defendants objected to the motion. The court denied the motion. The appeals cannot be saved by warping them into the guise of nonexistent demurrers filed by the defendants at the time of trial.[3]
*Supp. 9 While respondents have not raised any objection to these appeals, “The parties may not by agreement or stipulation create an appellate proceeding which is not authorized by statute.” (People v. Rawlings (1974) 42 Cal.App.3d 952, 959 [117 Cal.Rptr. 651].) We must order the appeals in Crim. A. No. 16274, Crim. A. No. 16275 and Crim. A. No. 16466 dismissed.
This still leaves us, however, with defendant’s appeal from its conviction in People v. Veltri, Crim. A. No. 16348. Accordingly, we turn to the substantive questions involved.

The SCAQMD Rules and Regulations Were Properly Adopted

The SCAQMD was created by the enactment in 1976 of the “Lewis Air Quality Management Act” (Health & Saf. Code, § 40400 et seq.; see especially § 40410.)[4] Effective February 1, 1977, it commenced operation and assumed the authority, functions, and responsibilities of the APCD. (§ 40416.) The SCAQMD was designated by the Legislature as “the sole and exclusive local agency within the South Coast Air Basin with the responsibility for comprehensive air pollution control. . . .” (§ 40412.) Section 40440 states:
“(a) Not later than December 31, 1977, the south coast district board shall adopt rules and regulations that are not in conflict with federal and state laws and rules and regulations and reflect the best available technological and administrative practices. Upon adoption and approval of the plan, such rules and regulations shall be amended, if necessary, to conform to the plan.
“(b) The rules and regulations of the Southern California Air Pollution Control District shall remain in effect and shall be enforced by the south coast district, until superseded or amended by the south coast district board.”
*Supp. 10 Other provisions of the Lewis Air Quality Management Act set forth specific instances with respect to which the SCAQMD is authorized or directed to adopt rules and regulations. (E.g., §§ 40441, 40443, 40444, 40445, 40500 and 40506.)
The Lewis Air Quality Management Act is found in chapter 5.5 of part 3, division 26 of the Health and Safety Code. The division (which commences with § 39000) deals with air resources. It is necessary to refer to sections outside the Lewis Air Quality Management Act in order to understand appellant’s argument that SCAQMD rules and regulations have not been properly adopted.
The phrase “state board” is used throughout the division to mean the State Air Resources Board. (§§ 39010, 39053.) The state board is a state agency charged with coordinating air quality efforts (§ 39003), with specific responsibility as to motor vehicle emissions. (§ 39500.) The word “district” is used throughout the division to mean air pollution control districts or air quality management districts. (§ 39025.)
In part 3 of the division the Legislature has provided for various kinds of districts. It has found and declared that local and regional authorities have the primary responsibility for control of air pollution from all sources other than motor vehicle emissions. (§ 40000.) Section 40001 provides that districts shall adopt and enforce rules and regulations which assure that reasonable provision is made to achieve and maintain state air quality standards for the area under their jurisdiction, “[s]ubject to the powers and duties of the state board.”
We have already noted the sections of the Lewis Air Quality Management Act which specifically authorize the SCAQMD to make rules and regulations. Additionally to that authority, chapter 6, of part 3 of division 26 spells out the procedure by which districts may adopt rules. The sections are 40702-40704.[5] As can be seen, the sections require that *Supp. 11 30 days’ notice of the time and place of the hearing at which rules and regulations will be adopted should be given. The notice must include the proposed rule or regulation. Any rule or regulation adopted, amended or repealed must be filed with the state board within 30 days.
It is this provision which appellant attacks. Appellant concedes that the SCAQMD gave the proper advance notice. There is a presumption that official duty was regularly performed (Evid. Code, § 664) and it is a presumption affecting the burden of proof. (Evid. Code, § 660.) Therefore its effect is to impose on defendant the burden of proof that the SCAQMD did not file with the state board. Defendant failed to carry this burden. Hence we apply the presumption. Defendant urges that the SCAQMD regulations are invalid primarily by arguing that the SCAQMD is a state agency. The result, defendant says, is that the rules and regulations had to be filed with the Secretary of State and published in the Administrative Code in order to be valid and to give notice. (Gov. Code, §§ 11380, 11409, 11422.) While regulations of state agencies must follow this procedural route, the short answer to defendant’s contention that the wrong statutory procedure was followed is that, as noted above, the SCAQMD is expressly provided to be a local agency. (§ 40412.) That section expressly refers to the SCAQMD as “the sole and exclusive local agency within the South Coast Air Basin with the responsibility for comprehensive air pollution control. . . .” The agency was created as a result of a legislative finding (§ 40402) that the South Coast Air Basin is a unique geographical entity with its own special air pollution problems. The section also contains a legislative finding and declaration that to successfully develop and implement strategy for achieving and maintaining state and federal standards for air quality local governments must be delegated additional authority (§ 40402, subd. (e)) and that “the responsibilities of local and regional authorities with respect to air pollution control must be fully integrated into an agency with basinwide authority, governed by representatives of county and city governments.” (§ 40402, subd. (f).)
Defendant refers to section 40700, which states that “A district is a body corporate and politic and a public agency of the state.” In our view *Supp. 12 that section only states the obvious; the SCAQMD and other such districts are not private agencies. The section does not declare that the district is a “state agency.” Similarly misplaced is defendant’s reliance on section 40001 which calls for districts to adopt rules and regulations “subject to the powers and duties of the state board.” The quoted language means only that the Air Resources Board maintains a superior position to that of local districts, so as to assure that their regulations do not conflict with its overall responsibilities and programs. The section does not make each district into a “state agency” or require that its regulations be filed with the Secretary of State.
Thus, we hold that compliance with the provisions of section 40703 and 40704 meets all statutory requirements to validate the rules and regulations of the SCAQMD.
Finally, on this issue, defendant asserts that its right to due process was violated because of a lack of notice as to what rules were adopted, amended or repealed.
Defendant does not, nor could it reasonably do so, assert that there is inadequate notice of the intended adoption of rules. Clearly section 40703 (fn. 5, ante) is sufficient to apprise all those interested in the intended action and to afford them an opportunity to present their objections. (Mullane v. Central Hanover Tr. Co. (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Defendant’s argument is that filing of the adopted rules and regulations with the state board (§ 40704) is not sufficient to give it proper notice. We fail to see why this is so. Once filed, the rules and regulations would be public documents, open to inspection; having been forewarned of the intended adoption of the rules and regulations—a forewarning that includes an actual copy of them—it is only necessary for one interested in determining what rules and regulations actually have been adopted to inquire as to what has been filed. In People v. Cull (1961) 10 N.Y.2d 123 [218 N.Y.S.2d 38, 176 N.E.2d 495] the court explained that the purpose for requiring administrative rules and regulations to be filed was to provide a common and definite place where their exact content might be found. Section 40704 prescribes that place; the statutory prescription itself affords to defendant and to anyone else interested notice of where the adopted regulations may be found.
We know of no requirement that the same notice given before adoption must be repeated after adoption. Section 40704 itself advises the world that adopted regulations are on file with the state board. Simple inquiry *Supp. 13 of the state board will produce them for anyone interested. The California Public Records Act (Gov. Code, § 6250 et seq.) expressly makes the public records of the Air Resources Board subject to inspection at all times during office hours and requires the board to establish written guidelines for accessibility of records. (Gov. Code, § 6253.) Copies shall be provided upon request accompanied by a minimal fee. (Gov. Code, §§ 6256-6257.)
We hold that adequate notice of adopted regulations of the SCAQMD is provided by the statutory requirements.

Other Issues

1. Jurisdiction
Appellant alleges that the trial court lacked jurisdiction in this matter because the violation occurred on a federal enclave. The argument is that exclusive jurisdiction rests in the federal government. The offense occurred at the Veteran’s Hospital in Sepulveda, California. The trial court determined that this location was not subject to exclusive federal jurisdiction. That determination is supported by substantial evidence.
Appellant relies on an April 27, 1948, letter from the Los Angeles County Counsel to an air pollution control officer in Los Angeles. The letter states that “On December 5, 1946, the Veterans Administration accepted exclusive jurisdiction over the Hospital at San Fernando consisting of 616.64 plus or minus acres specifically described.” It is claimed that this is the hospital where the offense occurred.
Respondent counters with a 1974 opinion of the California Attorney General, 57 Ops.Cal.Atty.Gen. 42, 45-47, which provides a review of the law regarding the jurisdictional status of federally owned lands in California. The pertinent parts of the opinion state: “. . . the state and the United States may make any mutually suitable agreement as to partial, concurrent, or exclusive exercise of jurisdiction over land acquired by the federal government. Johnson v. Morrill [1942] 20 Cal.2d 446, 452 .... Under a 1940 amendment to 40 U.S.C. section 255, unless the United States files a notice of acceptance of a cession with the governor of the state, or otherwise follows the procedure for acceptance set forth in the state cession statute, it is conclusively presumed that no such jurisdiction has been accepted. People v. Brown, 69 Cal.App.2d 602, 605 (1945) .... Where the United States acquires land and the state does *Supp. 14 not cede to the federal government any of its legislative jurisdiction over the land, or where the United States does not accept any degree of jurisdiction as required by 40 U.S.C. section 255, the parcel in question is held under a federal proprietorial interest only. This means that the state has not given up any of its power to enforce state laws and regulations on the land. . . .”(57 Ops.Cal.Atty.Gen. at p. 46.)
Respondent goes on to point out that Government Code section 127 requires the State Lands Commission to prepare and maintain an index of land owned by the United States in California which shows the degree of jurisdiction obtained by the United States for each acquisition. A letter from the California State Lands Commission was received in evidence. It establishes that the federal government has only a proprietary status at the Veterans Hospital in Sepulveda. The letter states, in part: “The records of the State Lands Commission held pursuant to California Government Code section 127, indicate that the State of California has exclusive jurisdiction over the Veterans Administration Hospital at 16111 Plummer Street, Los Angeles, California.” The trial court properly determined that it had jurisdiction in this case.
2. Veltri was not operating with a valid permit.
Appellant Veltri was convicted in count II of violation of rule 203 of the South Coast Air Quality Management District rules and regulations, in that it used a tar kettle without first obtaining a written permit as required by rule 203. It was convicted in count III of violating rule 471(e)(2)(A) of the South Coast Air Quality Management District rules and regulations in that it used regulated equipment without submitting an application for authority to construct by July 1, 1977. Veltri argues that it had valid permits in both instances. It based this claim on the fact that the Roofing Contractors’ Association and Roofing Contractors’ Industry Fund of Southern California, Inc. had applied for a permit prior to the date of the alleged violations. The application, received in evidence, was entitled “Application for Authority to Construct and Permit to Operate.” Veltri claims that this document operates as its application.
The permit to operate was denied on November 18, 1975. The denial was affirmed by the Air Pollution Control Hearing Board on February 23, 1976, and reaffirmed on February 23, 1977. The charged violations occurred on or about July 19, 1977.
It appears that the Roofing Contractors’ Association and the Industry Trust Fund petitioned for a writ of mandate in superior court to reverse *Supp. 15 the decision of the hearing board with regard to the permit. This was pending at the time of the alleged violations. From this, appellant argues that the denial of the permit to operate was not final because it was before the superior court. Veltri relies on the following language from rule 201 of the South Coast Air Quality Management District rules and regulations for further support: “A permit to construct shall remain in effect until the permit to operate the equipment for which the application was filed is granted or denied, or the application is cancelled.”
This argument is without merit. The trial court was justified in determining that appellant did not have a valid permit under either count II or count III. The testimony at trial established that Veltri did not file an application for a permit under either rule 203 or rule 471(e)(2)(A). There was no testimony to indicate any permit issued to the Roofing Contractors’ Association would operate as a valid permit for appellant. Furthermore, the permit requested by the Roofing Contractors’ Association was denied bringing rule 201 into play. The fact that a writ had been sought in superior court does not change the character of the administrative action.
3. Conduct Not Excused
Veltri argues, apparently with regard to section 41701, that its conduct was excused by rule 430[6] of the South Coast Air Quality Management District rules and regulations. Veltri was convicted of *Supp. 16 violating section 41701, and of two counts of violating section 42400 in that he violated rules 203 and 471(e)(2)(A), of the SCAQMD. It is not entirely clear to us if the argument relates only to the section 41701 violation or to the other offenses as well. It is not well taken in either event.
Section 41701 prohibits the discharge of specified levels of air contaminants into the atmosphere. Rule 430 provides an exception to some of the provisions of the South Coast Air Quality Management District regulations when there has been an equipment breakdown. It does not purport to excuse violations of the Health and Safety Code provisions and thus does not excuse the section 41701 offense.
As to the other two counts, the rule does not assist Veltri. The rule specifies various criteria which must be met in order to establish an equipment breakdown. It states that the burden of proving those criteria is upon the person attempting to come under the provisions of the rule. Veltri established none of the necessary criteria which are as follows: (1) That the excess emissions did not result from operator error, neglect, or improper operating or maintenance procedures. (2) That steps were immediately taken to correct the condition leading to the excessive emissions and to minimize the emission itself. (3) That the equipment was operated only until the end of a cycle or 24 hours, whichever was sooner, at which time it was shut down for repairs.
Furthermore, there is no evidence that appellant even attempted to avail itself of the provisions of rule 430 when the breakdown occurred.

Disposition

The appeals in Crim. A. No. 16274, Crim. A. No. 16275 and Crim. A. No. 16466 are dismissed.
*Supp. 17 The judgment in Crim. A. No. 16348 is affirmed.
Bigelow, J., and Ibáñez, J., concurred.

 The notices of appeal in these two cases and in Crim. A. No. 16466 also state that the appeals are from the orders of Judge Sauer in refusing to take judicial notice of the rules and regulations. Such orders are not separately appealable (Pen. Code, § 1466, subd. 1.), and the appeals from these orders are dismissed.

 Under that subdivision the People may appeal (a) from an order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy; (b) from a judgment for the defendant upon the sustaining of a demurrer; (c) from an order granting a new trial; (d) from an order arresting judgment; (e) from any order made after judgment affecting the substantial rights of the People.

 The People suggest that if “the defense posture” did not constitute proper grounds for a demurrer the defense procedure would have been to make a pretrial motion to dismiss. (Murguia v. Municipal Court (1975) 15 Cal.3d 286, 293, fn. 4 [124 Cal.Rptr. 204, 540 P.2d 44].) Then, the People suggest, the trial court’s “purported ruling” would properly be characterized as a judgment sustaining motion to dismiss. Presumably, this argument is made to suggest, somewhat elliptically, that the appeals are proper under Penal Code section 1466, subdivision 1, subsection (a), dealing with judgments terminating actions prior to a defendant being placed in jeopardy. All of this is interesting, but hypothetical. There was nothing “purported” about the trial court’s evidentiary rulings rejecting the *Supp. 9 taking of judicial notice in response to the People’s motions that such notice should be taken. No pretrial motion, a la Murguia, was made by any of the defendants. And, it is patent that in at least two of the cases there was no question that the trial had already been embarked upon, since the People made other evidentiary offers aside from the request to take judicial notice. The People wisely refrain from expressly suggesting the appeals lie under subdivision 1, subsection (a) of Penal Code section 1466.

 Except as specifically otherwise cited, all further section references in this opinion are to sections of the Health and Safety Code.

 Section 40702: “A district shall adopt rules and regulations and do such acts as may be necessary or proper to execute the powers and duties granted to,- and imposed upon, the district by this division and other statutory provisions. “No order, rule, or regulation of any district shall, however, specify the design of equipment, type of construction, or particular method to be used in reducing the release of air contaminants from railroad locomotives.” Section 40703: “(a) A district board shall not adopt, amend, or repeal any rule or regulation without first holding a public hearing thereon. “(b) Notice of the time and place of a public hearing to adopt, amend, or repeal any *Supp. 11 rule or regulation shall be given not less than 30 days prior thereto to the state board, which notice shall include a copy of the rule or regulation proposed to be adopted, amended, or repealed, as the case may be, and by publication in the district pursuant to Section 6061 of the Government Code. In the case of a district which includes portions of more than one county, the notice shall be published in each such county.” Section 40704: “A district board shall file with the state board, within 30 days, any rule or regulation the district board adopts, amends, or repeals.”

 “Rule 430 Breakdown Provisions “(a) A person shall report any breakdown which results in a violation of any rule in Regulations IV or XI to the District within one hour of such breakdown or within one hour of the time said person knew or reasonably should have known of its occurrence. Such report shall identify the time, specific location, equipment involved and to the extent known, the causes of the breakdown. The estimated time for repairs shall be reported as soon as possible thereafter. “(b) The provisions of any rule in Regulations IV or XI with the exception of Rule 402 do not apply to any emissions directly caused by a breakdown of any equipment provided all of the following criteria are met: (1) The excess emissions did not result from operator error, neglect, or improper operating or maintenance procedures. (2) Steps are immediately taken to correct the condition leading to the excessive emissions and to minimize the emission itself. (3) The equipment is operated only until the end of a cycle or twenty-four hours, whichever is sooner, at which time it shall be shut down for repairs. The burden of proving the criteria in this subsection shall be upon the person attempting to come under the provisions of this rule. “(c) If a violation of any rule in Regulation IV or XI is likely or suspected as a result of a reported breakdown, the Executive Officer shall promptly investigate and determine whether the occurrence constitutes a breakdown in accordance with the criteria set forth in subsection (b) of this rule. “(d) Equipment may be operated beyond the limitation in subsection (b)(3), provided that a petition for an emergency variance has been filed with the Clerk of the Hearing Board in accordance with Regulation V. In the event that the breakdown occurs outside *Supp. 16 of the normal District working hours, the intent to file for an emergency variance shall be transmitted to the District in the manner and form prescribed by the Executive Officer. “(e) Within one week after a breakdown which caused a violation of any rule in Regulations IV or XI has been corrected, the owner or operator shall submit a written report to the Executive Officer which includes: (1) A statement that the breakdown has been corrected, together with the date of correction and proof of compliance; (2) A specific statement of the reason(s) or cause(s) for the breakdown sufficient to enable the Executive Officer to determine whether the occurrence was a breakdown in accordance with the criteria set forth in subsection (b) of this rule; (3) A description of the corrective measures undertaken and/or to be undertaken to avoid such a breakdown in the future; (4) An estimate of the emissions caused by the breakdown; and (5) Pictures of the equipment or controls which failed, if available.”