[No. D029297. Fourth Dist., Div. One. Sept. 17, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
LORI HOKIT, Defendant and Appellant.

**COUNSEL**

Robert L. Swain, under appointment by the Court of Appeal for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Warren P. Robinson and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—In this case the defendant was stopped one evening when she was driving westbound on Highway 80 in a rural area of San Diego County. Border patrol agents had been alerted by a signal from a motion sensor placed along a dirt road, which was a public roadway, leading from some residences near the international border to Highway 80. The agents did not see the car, if any, which tripped the sensor, nor did they see the defendant exit that road onto Highway 80. They concluded, however, from the timing of the signal that the car they saw on the highway was probably the one that tripped the sensor. As they followed the car, they did not observe any significant suspicious behavior, did not believe the defendant was a foreign national, observed no Vehicle Code violations, and the car was properly registered. In short, the agents stopped the car because it was routine practice to stop any car coming from the area of the sensor, located on a public road about one-half mile inside the United States, for an immigration check.

Thus, this appeal presents the question of whether a person who may have driven by a border patrol sensor which has been placed along a public roadway, without more, can be lawfully stopped on a public highway for an "immigration check." We hold that more facts, consistent with criminal

activity, are required to establish reasonable suspicion justifying such detention. Accordingly, we will reverse the trial court's ruling denying the motion to suppress the evidence found in the stop of the defendant's car.

## PROCEDURAL BACKGROUND

Lori Hokit was charged with transportation and possession of marijuana for sale (Health & Saf. Code, §§ 11360, subd. (a), 11359). Hokit's motions under Penal Code[1] section 1538.5 at the preliminary hearing and in the superior court were denied. She pled guilty to both counts of the information and was given a probationary sentence.

Hokit appeals, challenging the trial court's denial of her motion to suppress as is authorized by section 1538.5, subdivision (m).

## FACTUAL SUMMARY

We address only the facts as they relate to the detention of the car. Hokit does not contend the search which followed the detention was invalid.

About 8:45 p.m. on April 29, 1997, border patrol Agent Abalos was informed by another agent that a sensor (vehicle intrusion device) located on a dirt road near Highway 80 had been activated. The road is in the Jacumba area of San Diego County, approximately 60 miles from the City of San Diego.

The particular intrusion device was located along a dirt road that is open to the public and which runs from Highway 80 to some residences located near the international border. The device was located about one-half mile from the border. There is a locked gate at one end of the road. The other end of the road intersects with Highway 80. Agent Abalos testified that a vehicle coming from that road has to exit onto Highway 80. The gate at the other end is generally locked and, according to Abalos, only residents and border patrol agents can get through the gate.

Agent Abalos was parked on Highway 80 when he observed Hokit's car pass him going westbound. Abalos did not see the car exit the dirt road, but concluded that the car had been on the road since it passed him about three minutes after he was notified of the activation of the device. Abalos said it would take about three minutes to drive from the location of the device to his position on Highway 80. He did not see whether there was any vehicle headed eastbound from the dirt road.

---

[1]All further statutory references are to the Penal Code.

Hokit's car had first been seen by Agent Snyder from a different location headed west on Highway 80. Agent Snyder did not testify to seeing the car exit the dirt road. Snyder did not see any other car in the area.

The car which Abalos observed matched the description given him by Snyder. Abalos noted the car appeared to brake as it passed his location as if to slow down.

Abalos followed the car for about one and one-half miles. He noted the driver did not appear to be Hispanic. Abalos noted no unusual driving or Vehicle Code violations. Abalos ran a record check and found the car was registered to Jesus Lopez of San Diego. The vehicle appeared to be "somewhat low" in the back. Based on his observations, Abalos decided to stop the car for an "immigration" check. Abalos testified that it was "standard practice" to stop vehicles which have activated an intrusion device and that the area from which he believed the vehicle had come was known for a high incidence of alien and drug smuggling.

The subsequent search of the car produced approximately 270 pounds of marijuana.

### DISCUSSION

In reviewing the trial court's decision on a motion to suppress evidence under section 1538.5, we must accept the factual findings of the trial court to the extent that they are supported by substantial evidence. As to the legal significance of such facts, however, we apply our independent judgment. It is our responsibility to determine whether, in light of the established facts, authorities lawfully seized the evidence subject to the motion. (*People* v. *Alvarez* (1996) 14 Cal.4th 155, 182 [58 Cal.Rptr.2d 385, 926 P.2d 365].) The facts in this case are not in dispute.

We turn then to the question of whether, on the totality of circumstances, the agents had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." (*United States* v. *Cortez* (1981) 449 U.S. 411, 417-418 [101 S.Ct. 690, 695, 66 L.Ed.2d 621].) Or, as the Ninth Circuit has stated it: The "particularized and objective basis" must be such as to "excite the suspicion of a trained border patrol agent that criminal activity is afoot." (*U.S.* v. *Rodriguez* (9th Cir. 1992) 976 F.2d 592, 594.)

In 1975 the Supreme Court specifically dealt with the authority of border patrol agents to conduct "roving patrol stops." The court rejected the government's contention such stops were authorized by their proximity to the

border and the need to interdict the flow of illegal aliens. The court held such stops could be made on an individual basis only where the agents had reasonable suspicion, based on articulable facts, of unlawful activity within their jurisdictional authority. The court said: "[W]hen an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." (*United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 881 [95 S.Ct. 2574, 2580, 45 L.Ed.2d 607]; see also *United States* v. *Place* (1983) 462 U.S. 696, 702-703 [103 S.Ct. 2637, 2641-2643, 77 L.Ed.2d 110].)

■ In light of the above authorities, it is our task to determine if the agent had a "particularized and objective basis" to believe that Hokit was engaged in criminal activity in order to justify his action in stopping her car. The Attorney General urges that there is such information. He contends the following facts are sufficient: First, the area from which the car may have come is an area "known" for smuggling activities, both drugs and aliens. Second, persons traveling the public, albeit dirt road, would usually be residents or agents. Third, the vehicle driven by Hokit was registered to a male in San Diego, some 60 miles away. Fourth, the vehicle slowed slightly when it passed the agent in his patrol vehicle and, finally, the car appeared to ride somewhat low in the back.

Respectfully, we believe the information known to the agent when he decided to stop the car did not rise to the level of reasonable suspicion as those terms are defined in *Brignoni-Ponce* and *Place*. Rather, this stop was only justified by Abalos's observation that he stops all cars which trip the intrusion device as a matter of routine practice.

Reduced to its basics, the stop in this case was performed because the agent believed Hokit had activated a sensor. He testified he stops all cars which activate the sensor. The sensor, according to the record, is located on a public road, accessible to United States citizens for lawful purposes and is well within the national border. Thus, while the agent's knowledge of the area would justify further investigation by the agent, *Brignoni-Ponce* specifically precludes stops based only on border proximity. The prosecution position here would permit agents to stop anyone traveling a public road near the international border. The Supreme Court has authoritatively deprived the government of that authority.

Undoubtedly, the location of the sensor and the agent's knowledge of the area, coupled with other suspicious data would support a "particularized and objective basis" for detention. (*United States* v. *Cortez, supra,* 449 U.S. at

pp. 417-418 [101 S.Ct. at p. 695].) There are no such other facts here. That the car is registered to a person in a different location of the county cannot be viewed as corroborative of criminal activity. Surely, it cannot be the case that a person is subject to stop if he or she is driving in an area of a county different than the address of the registered owner of the car. There was no indication the driver was a foreign national nor were there any facts showing an effort to evade the agents.

At best, the car braked briefly to slow as it passed a patrol car and was "somewhat low in the back." While such minor facts might corroborate some more substantial suspicion, they add little to the officer's data in this case.

There is no evidence the car was the one which left the dirt road. It could have been, but it was only spotted headed westbound on Highway 80. We have no idea where Agent Snyder was located or where he saw Hokit's car. Nor do we know if any other cars were headed eastbound from the same area. What we have is an officer who stopped a car, which he was going to stop based only on proximity because it could have been the car from the dirt road. As we have noted, passing a border patrol sensor on a public road in the United States, without more, is not sufficient particularized and objective justification to stop a citizen. As sensitive as we are to the difficult task the immigration service has in policing our international border, we cannot support routine stops based only on location. Accordingly, we must find that the trial court erred in denying Hokit's motion to suppress.

### DISPOSITION

The judgment is reversed and the case remanded with directions to the trial court to set aside its order denying the motion to suppress and enter a different order granting such motion. The court is directed to permit Hokit to withdraw her guilty plea.

Nares, J., and McIntyre, J., concurred.

A petition for a rehearing was denied October 8, 1998, and respondent's petition for review by the Supreme Court was denied January 13, 1999.