[No. D031554. Fourth Dist., Div. One. Dec. 27, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KURT CRUSILLA, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part I.B and part II.

**COUNSEL**

Andrew G. Verne for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Carlson M. Legrand, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HUFFMAN, J.**—At the San Ysidro Port of Entry (Port of Entry) for the United States (U.S.)-Mexico border, a federal facility operated by the Immigration and Naturalization Service (INS), Kurt Crusilla was stopped by an immigration inspector and was subsequently arrested by a California Highway Patrol (CHP) officer for suspected drunk driving. After Crusilla's pretrial motion to suppress evidence, challenging the validity of the arrest and the admissibility of evidence gained from the arrest, was denied, a jury found him guilty of one count of driving under the influence of alcohol in violation of Vehicle Code[2] section 23152, subdivision (a), and one count of driving while having a blood-alcohol concentration of .08 percent or more in violation of section 23152, subdivision (b). Following the jury verdict, the trial court found true allegations that within seven years of the commission of the charged offenses, Crusilla had suffered three prior convictions of driving under the influence within the meaning of section 23175. The trial court sentenced Crusilla to 16 months in state prison for the section 23152, subdivision (a) conviction. The trial court imposed a like term for the conviction of section 23152, subdivision (b), but stayed that sentence pursuant to Penal Code section 654.

Crusilla appeals, first arguing the trial court erred in failing to grant his pretrial motion to suppress evidence of his drinking and his statements to a police officer summoned by the INS agent to investigate the situation. (Pen. Code, § 1538.5.) Crusilla also makes contentions of error at trial: (1) his motion for a continuance to obtain discovery was erroneously denied; (2) the prosecutor committed misconduct during closing argument by referring to facts outside the trial record; (3) instructional error occurred regarding jurisdiction; and (4) insufficient evidence supports the judgment of guilt regarding whether the offense occurred within the boundaries of San Diego County. None of these arguments are well taken and we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of June 21, 1997, Crusilla drove his Jeep across the U.S.-Mexico border and approached the Port of Entry "vehicle primary" inspection facility, consisting of 24 booths with vehicle lanes (known as pre-primary) feeding into them. The facility is located 100 to 150 yards from the international border inside the U.S., in San Diego County (County). The INS officials operating this facility stop vehicles entering from Mexico and question their occupants as to their citizenship and items being brought into the U.S.

---

[2]All further statutory references are to the Vehicle Code unless otherwise specified.

INS Inspector Terry Carter was in charge of the booth that Crusilla drove up to at vehicle primary, approximately 125 yards inside the border. At that point, Carter had not observed anything erratic about Crusilla's driving. Carter asked Crusilla about his citizenship and noticed that he smelled like alcohol and his eyes were glassy and bloodshot. When Crusilla responded to questions, his speech was slurred, slow and indistinct. Because Carter suspected Crusilla was under the influence of alcohol, he followed his normal procedure in such a case by asking him to turn his vehicle engine off and step out to be escorted to a secondary inspection facility nearby. Crusilla, who appeared disheveled and unkempt, staggered when he got out of the car. Inspector Carter informed him he was suspected of driving under the influence, made a citizen's arrest, asked a nearby agent to move the vehicle, and took Crusilla to the secondary office.[3]

About an hour later, CHP Officer Elizabeth Barkley responded to a request to investigate the situation and found Crusilla sitting in a holding cell, not handcuffed. He smelled like alcohol and had bloodshot eyes and slurred speech. He responded to her inquiries by telling her he had started drinking in Tijuana around 11:00 a.m. and stopped about 1:00 p.m., having had three shots of tequila and three beers. Crusilla performed poorly on field sobriety tests and flunked a preliminary alcohol screening test. Officer Barkley took him into custody based on those facts and Inspector Carter's reported statements about Crusilla's appearance and behavior at the inspection booths and thereafter.

Crusilla was taken to County jail where breathalyzer tests were conducted about two hours after his initial stop; they showed blood-alcohol levels of .16 to .17 percent. At trial, a county criminalist testified about the accuracy and results of the tests, opining Crusilla would have been incapable of safe operation of a motor vehicle at that blood-alcohol level.

Crusilla brought a motion to suppress the evidence obtained in connection with his stop at the station on the basis that Inspector Carter lacked the authority to stop and detain him. The motion was denied. At jury trial, the prosecution presented evidence of the facts as above stated. After unsuccessfully seeking a continuance to obtain videotapes and computer records of the border-crossing incident, the defense did not present any evidence at trial. The jury convicted Crusilla of both counts charged and the court found true the allegations of three prior convictions. (§§ 23152, 23175.) He was sentenced to state prison and he appeals.

---

[3]In addition to the vehicle primary, the pre-primary roadway area, and the secondary inspection facility, there is also a U.S. Customs building at the Port of Entry. However, factually, the Customs building is not involved in this case.

DISCUSSION

I

*Motion to Suppress; Jurisdictional Issues*

■ "In reviewing the trial court's decision on a motion to suppress evidence under section 1538.5, we must accept the factual findings of the trial court to the extent that they are supported by substantial evidence. As to the legal significance of such facts, however, we apply our independent judgment. It is our responsibility to determine whether, in light of the established facts, authorities lawfully seized the evidence subject to the motion." (*People v. Hokit* (1998) 66 Cal.App.4th 1013, 1017 [78 Cal.Rptr.2d 412].) ■ We inquire whether Inspector Carter had the authority to detain Crusilla in this manner, leading to the custodial arrest, as it affects the admissibility of his statements incident to arrest and the physical evidence of intoxication.

A

*Port of Entry: Jurisdictional Issues*

The basis of the motion to suppress evidence was that Inspector Carter, as a federal immigration inspector, had only limited authority to question persons crossing the border about their right to enter or remain in the U.S. (See 8 U.S.C. § 1357(a) [powers of an immigration officer to investigate citizenship without a warrant and make arrests].) This authority, Crusilla argued, did not extend to making arrests for suspected driving under the influence of alcohol, at a federal facility, without express authorization by state authorities. These arguments raise several questions: What is the relationship of federal and state jurisdiction at the portion of the border where the Port of Entry is located, what limitations are placed upon a federal immigration inspector working at that location concerning an arrest for a state offense, and what is the extent of the showing Crusilla made in support of his jurisdictional argument?

■ Taking the last question first, it is well established that in state courts a claim that jurisdiction lies elsewhere (i.e., in the federal government) over an offense that is committed within the boundaries of the state, and that is defined by state law, is a defensive matter, and the defendant is required to allege and prove in the trial court " 'any facts which he now claims might have had the effect of vesting exclusive jurisdiction in the federal courts.' " (*People v. Allen* (1959) 172 Cal.App.2d 520, 522 [342 P.2d 368], citing *In re*

*Carmen* (1957) 48 Cal.2d 851, 855 [313 P.2d 817].) There is a presumption of jurisdiction of a state court in the absence of evidence showing that the state court had yielded or lacked jurisdiction over the property where an offense was committed. (*People v. Brown* (1945) 69 Cal.App.2d 602, 605-606 [159 P.2d 686].)

 Here, Crusilla cross-examined Inspector Carter at trial by asking him whether he worked for the federal government and was under federal jurisdiction at the time of Crusilla's arrest. Carter responded that he was a federal agent who did not enforce the laws of the State of California, but rather enforced federal law. Based on that showing at trial, Crusilla argued to the jury that a federal official should not have made this arrest. Earlier, at the motion to suppress hearing, Crusilla's argument was that a federal official acting in his official capacity was different from a civilian citizen performing a citizen's arrest, and especially stringent standards should be applied regarding probable cause.

On appeal, Crusilla has added to his jurisdictional argument by supplying as an attachment to his reply brief a stipulation and order from a federal condemnation action in which the federal government paid just compensation ($1) to the State of California for the 5.406 acres of land at the Port of Entry site, and acquired all rights and interests in the land as were previously held by the state government. (Reply brief filed Aug. 31, 1999, attachment, Stipulation and Order in *U.S. v. 5.406 Acres of Land* (S.D.Cal. 1994) No. CV-94-1460-GT; Ct.App., Fourth Dist., Local Rules, rule 8.) We may take judicial notice of this court filing. (Evid. Code, §§ 452, subd. (d), 459.) However, we note that a previous request by Crusilla that we take judicial notice of other portions of that court file and related title documents was previously denied by this court, over opposition by the People to the effect that such material had not been placed before the trier of fact.

Further, both Crusilla and the People have cited on appeal an official publication of the California Attorney General's Office, entitled San Ysidro Border Crossing Jurisdictional Analysis (rev.) June 1997, authored by Carl H. Horst of that office. It is also appropriate to take judicial notice of this publication as an official act of a government agency. (Evid. Code, §§ 452, subds. (c) & (d), 459; see 1 Witkin, Cal. Evidence (3d ed. 1986) Judicial Notice, §§ 100-102, pp. 86-89.) Based on this publication and other authority, we next outline the principles creating the different types of legislative jurisdiction that may apply to real property where there is a federal interest in property within a state. These principles are essential to an understanding of the arguments on this appeal and are discussed below as part of our

independent review of the questions of law arising out of the denial of the motion to suppress evidence. (*People v. Hokit, supra,* 66 Cal.App.4th 1013.)

■ It is first essential to note that there are three methods for federal acquisition of jurisdiction over land that would otherwise be under a state's control: (1) constitutional consent that the state gives pursuant to the U.S. Constitution, article I, section 8, clause 17; (2) a federal reservation of jurisdiction over property originally acquired by the federal government and later made part of a state admitted to the union; and (3) state cession of legislative jurisdiction over property within its borders, with at least one applicable exception (i.e., the right to serve criminal and civil process). (Jurisdiction Over Federal Areas Within the States: Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within the States (1957 U.S. GPO) pt. 2, pp. 41-46 (Jurisdiction Over Federal Areas Within the States).) Only the latter of these three methods applies to the property involved in this criminal action.

In this state, Government Code section 126 sets forth the general rule that the California Legislature has the power to cede concurrent criminal jurisdiction to the U.S. within land held by the U.S., within the boundaries of California, subject to specified express limitations, conditions and reservations. As pertinent here, no such cession of concurrent criminal jurisdiction to the U.S. takes place unless the federal government has requested such a cession of jurisdiction, and the State Lands Commission has made appropriate orders or resolutions and made them available to the public. (Gov. Code, § 126, subds. (c) & (d).)

Where federal legislative jurisdiction has been created in an area that would otherwise be subject to state control, it may take one of the following four forms:

(a) Exclusive legislative jurisdiction, in which the federal government theoretically displaces the state in which the area is contained of all its sovereign authority;

(b) Concurrent legislative jurisdiction: where a state has granted the federal government authority that would otherwise amount to exclusive legislative jurisdiction over an area, but the state has reserved to itself the right to exercise, concurrently with the federal government, all the same authority;

(c) Partial legislative jurisdiction: where the state has granted the federal government certain aspects of the state's authority, but where the state has

reserved for itself either the exclusive or concurrent authority to do an act going beyond the minimal standard of serving civil or criminal process in the area (for example, the right to tax private property);

(d) Proprietorial interest only: this category applies where the federal government has acquired title or rights to an area within a state, but has not obtained any cession of the state's authority over the area. (Jurisdiction Over Federal Areas Within the States, *supra*, pt. 1, pp. 13-14.)

 Crusilla argues he has made the necessary showing that exclusive federal jurisdiction applied to the Port of Entry area where he was arrested, and hence only federal drunken driving restrictions should apply, and an arrest for a violation of a state driving under the influence statute was invalid. (See, e.g., 41 C.F.R. § 101-20.307 (1999), prohibiting drunk driving on federal property.) In support, he refers to 8 United States Code section 1358, a provision that creates a federal exception to exclusive jurisdiction, where federal officers in charge of immigrant stations are required to admit "the proper State and local officers charged with the enforcement of the laws of the State or Territory of the United States in which any such immigrant station is located in order that such State and local officers may preserve the peace and make arrests for crimes under the laws of the States and Territories. . . ." This provision, he argues, shows that Congress intended to withhold enforcement of state laws on federal immigration facility land, except as stated above.

In contrast, the People claim that based on the analysis in the 1997 publication of the Attorney General's Office, Horst's San Ysidro Border Crossing Jurisdictional Analysis, *supra*, the Port of Entry is subject to a proprietorial interest only (with the exception of the U.S. Customs building, not involved in this case, which is subject to exclusive federal jurisdiction only). Hence, the Attorney General concludes that as to all nonfederal crimes committed since the date of the federal condemnation action taking (Sept. 21, 1994), state crimes are subject to prosecution only by state and local authorities, and only in state courts. (*Id.*, pp. 2-3, appen. C.) The legal conclusions in this publication are supported by a series of letters between the Attorney General's Office and attorneys for the State Lands Commission, revealing that the State Lands Commission had not, as of September 12, 1996, received any federal petition for a cession of jurisdiction over the areas of the Port of Entry that are not already under exclusive jurisdiction (i.e., the U.S. Customs building). (*Id.*, appen. A.) Accordingly, it is the opinion of staff counsel for the State Lands Commission that the United States has a proprietorial legislative jurisdiction over the inspection area of the Port of Entry, which includes the vehicle primary inspection area and the

secondary inspection area, as well as the pre-primary roadway leading up to the facility. (*Ibid.*)

As recognized by the author of a leading law review article in this area, the rules of legislative jurisdiction were for many years confusing and poorly developed. (Haines, *Crimes Committed on Federal Property—Disorderly Jurisdictional Conduct* (1981) 4 Crim. Just. J. 375, 377, 434-438.) For example, the author discusses the problems of proving jurisdiction at trial, noting that courts have recognized a distinction between legal and factual jurisdictional issues and have required that they be decided separately unless inextricably intertwined. (*Id.* at pp. 420-423.) He also discusses various federal enclaves within the County, concluding that the border station at San Ysidro encompasses many of the problems of jurisdiction, and stating that proprietary jurisdiction applies to the majority of the property, with the exception of 1.1 acres of exclusive jurisdiction property (the old U.S. Customs building). (*Id.* at p. 415.)

Nevertheless, we can clearly conclude from this record, the judicially noticeable material, and the authorities in the area that the presumption of state jurisdiction applies over the areas concerned in this arrest: vehicle primary, the pre-primary lanes leading up to the facility, and the secondary inspection facility. (*People v. Brown*, *supra*, 69 Cal.App.2d at pp. 605-606.) The federal government has an ownership interest in this property to pursue its function of controlling access to the border for various reasons. The public comes in and goes out of this area, and during that ingress and egress, various crimes may be committed, including driving under the influence of intoxicants, such as section 23152 forbids. Neither the federal ownership of the Port of Entry nor its operation of the inspection facilities removes the geographical location of the facility from the boundaries of the County, nor do they establish that exclusive federal jurisdiction has ever been asserted under the rules as set forth above. This record discloses no federal government expression of jurisdiction that would oust the state of its jurisdiction to prosecute or arrest for this kind of offense at this facility.

Accordingly, Crusilla failed to dispel the presumption that California jurisdiction applies, nor has he provided any support for his claim that exclusive federal jurisdiction exists and Inspector Carter was not authorized to do what he did: make a citizen's arrest of Crusilla, based on factors such as his appearance and behavior, and detain him until state authorities could take him into custody. (See *Padilla v. Meese* (1986) 184 Cal.App.3d 1022, 1030-1031 [229 Cal.Rptr. 310].)

We next consider Crusilla's additional challenges to the ruling on the motion to suppress evidence.

## B*

*Related Issues Re: Detention and Arrest*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied Aptil 12, 2000.

---

*See footnote 1, *ante*, page 141.