[No. A052542. First Dist., Div. Four. Mar. 10, 1992.]

PETER LOSKOUSKI, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

**COUNSEL**

Hilda Scheib for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry Ullerich, Acting Assistant Attorney General, Jose R. Guerrero and Kim M. Settles, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**POCHÉ, Acting P. J.**—Petitioner, Peter Loskouski, appeals from a judgment denying his petition for a writ of mandamus. Mr. Loskouski sought an order directing defendants, the state Personnel Board, its executive officer, the state Department of Industrial Relations and its director (hereafter collectively board) to provide by special rule that those individuals who had previously enforced health and safety regulations for the federal Occupational Health and Safety Administration (Fed/OSHA) be permitted to continue in their positions in the state civil service when the California Occupational Health and Safety Administration (Cal/OSHA) in 1989 resumed enforcement of health and safety regulations in the private sector.

Before turning to Mr. Loskouski's particular situation, we describe briefly the nature of the federal/state OSHA relationship. "Congress adopted the federal act in 1970 to address the problem of uneven and inadequate state protection of employee health and safety. In order to establish a nationwide 'floor' of minimally necessary safeguards, the 1970 act authorized the Secretary of Labor to promulgate and enforce national occupational safety and health standards and established Fed/OSHA to administer the act. [¶] Despite a broad authorization to Fed/OSHA to '. . . assure . . . every working man and woman . . . safe and healthful working conditions. . .' (29 U.S.C. § 651(b)), the act did not foreclose other federal agencies or

states from exercising such jurisdiction." (*United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 772 [187 Cal.Rptr. 387, 654 P.2d 157].)

The federal act permits a state to enforce its own OSHA regulations in areas subject to federal standards only after the state plan has been approved by Fed/OSHA. (29 U.S.C. § 667 (a)-(e).) The California Legislature enacted the California Occupational Safety and Health Act in 1973, one purpose of which was to adopt a plan which would satisfy the federal requirements. (Lab. Code, § 6300 et seq.;[1] Stats. 1973, ch. 993, § 104, p. 1954.) Once the California plan was approved in 1975 Cal/OSHA was permitted to enforce its provisions.

In the summer of 1987 after the state announced that it would not appropriate funds for Cal/OSHA, Fed/OSHA resumed enforcement for private sector employers in the state. On November 8, 1988, the voters of the state passed a ballot initiative by which they restored funding to Cal/OSHA.

Mr. Loskouski went to work for Fed/OSHA in January 1988 as a senior level safety engineer. By his declaration in support of the petition he avers that he "was responsible . . . for highly complex inspections in private sector industries, including electrical, industrial and health hazard, and investigations of a variety of work processes, operations and environments in the workplace for compliance with OSHA standards." His duties included "responding to employee complaints of unsafe working conditions and the investigation of accidents, complaints, fatalities and serious injuries." He also "consulted with employers, employees, representatives of labor organizations . . . and provided technical assistance and information concerning the OSHA program . . . ."

In August 1989 Mr. Loskouski was informed that his position in the Walnut Creek office of Fed/OSHA was being abolished and that he could remain in his federal job only if he was willing to accept reassignment to Sacramento. Declining to do that, he resigned his federal position in September 1989.

In January 1990 Mr. Loskouski made a demand upon the board that it implement as to him the requirements of article VII, section 6, subdivision (c) which provides: "When the state undertakes work previously performed by a county, city, public district of this state or by a federal department or agency, the board by special rule shall provide for persons who previously performed this work to qualify to continue in their positions in the state civil service subject to such minimum standards as may be established by statute." (Cal. Const., art. VII, § 6, subd. (c).) By letter of March 4, 1990, the

---

[1]Unless otherwise noted all subsequent statutory references are to the Labor Code.

board declined to do so, replying that in "the opinion of our legal counsel . . . the State is not undertaking work previously performed by federal employees in the OSHA program. The State and federal programs have concurrent but not identical jurisdiction."

Board successfully demurred to Mr. Loskouski's first amended petition. His second amended petition was denied, and this appeal followed. For the reasons set out below we reverse.

## Discussion

The issue before us turns on the meaning of what constitutes "work previously performed" by a federal agency. The board insists that Cal/OSHA has not undertaken work previously performed by Fed/OSHA because each entity only enforced its own standards, regulations, policies and procedures, albeit over the same arena—namely private sector employers in California. Moreover, the board correctly notes jurisdiction as between the state and federal entities is concurrent.

Our Supreme Court has explained that the effect of the federal approval of a state plan "merely removes federal preemption so that the state may exercise its own sovereign powers over occupational safety and health." (*United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd.*, *supra*, 32 Cal.3d at p. 772.) A state may elect to regulate more strictly than the federal government does; but to gain approval of its plan it must regulate at least as stringently. (*Ibid.*; 29 U.S.C. § 667(c)(2).) Thus, while the jurisdiction of the state and the federal governments is concurrent, it is not necessarily coincident because the state may choose to regulate a broader scope of activities or regulate them in greater detail than the federal government does.

The board's argument then is simply that because the statutes and regulations of Fed/OSHA are different from those at Cal/OSHA the conduct of enforcing and interpreting them cannot, by definition, be "work previously performed" so as to activate the mandatory duty imposed upon the board by the Constitution to provide "by special rule . . . for persons who previously performed this work to qualify to continue . . . in the state civil service . . . ."

We are unpersuaded. The agreements between the state and the federal entities indicate that there was an area of enforcement responsibility which passed from Fed/OSHA to Cal/OSHA in the course of 1989.

The memorandum of understanding entered into by Fed/OSHA and the state Department of Industrial Relations on March 30, 1989, set out the interim division of responsibilities between the two agencies "until such time as Cal/OSHA is able to assume full enforcement responsibility and Federal

authority may again be suspended." For example: "Federal OSHA will retain responsibility for and resolve all workplace complaints received prior to May 1, 1989. All complaints received after that date will be referred to Cal/OSHA for appropriate action. [¶] . . . California will resume investigation of discrimination complaints. Federal OSHA will resolve all private sector 11(c) complaints filed with or received by either Federal OSHA or Cal/OSHA before May 1, 1989 . . . . Discrimination complaints filed with Federal OSHA after May 1 will be accepted for Federal filing but referred to the State for investigation . . . ."

The final agreement between the two entities signed in early October 1989 found after federal review that the state plan set standards sufficient "to provide overall protection equal to comparable Federal standards." Further "[t]he State has elected under its . . . plan to apply its standards . . . to cover all existing Federal OSHA issues." "Using its existing standards, enforcement over all issues as promulgated under Section 6 of the Act is resumed by the State on October 1, 1989." Finally, "Federal enforcement authority is withdrawn with respect to all issues covered under the Plan with the exception of the Field Sanitation, Hazardous Waste Operations and Air Contaminants Standards which are less stringent than Federal standards." The agreement also sets forth the areas of exclusive federal jurisdiction including federal employees, maritime activities, etc.

While it is obvious that the activities of state and federal OSHA employees have never been entirely coincident, it strains the plain meaning of words to argue that when Cal/OSHA resumed private sector enforcement it was not "undertaking work previously performed" by Fed/OSHA. Just as employees of Fed/OSHA have some areas of exclusively federal jurisdiction to regulate, so Cal/OSHA employees have uniquely California statutes to enforce. However, given the federal mandate that the California standards provide health and safety protections comparable to those established by federal law, the work which is being done—namely enforcing such protections within the California private sector—was taken over by Cal/OSHA from its federal counterpart.

Because private sector enforcement was taken over by the state the board was obligated to provide by special rule for Fed/OSHA enforcement officers to continue in the positions within the state civil service. Mr. Loskouski was among the class of federal employees doing such work, therefore the board did not have discretion to decline to adopt such a rule when he demanded it do so.

 Mr. Loskouski also maintains that he is entitled to a position with Cal/OSHA equivalent in grade to that he formerly occupied, and that he must be afforded all benefits "to which he would have been entitled, had he

continued in his position" with Fed/OSHA. Government Code section 19994 provides for such seniority, sick leave, and vacation credit when the state assumes responsibility for a function previously performed by another agency.[2]

Assuming Mr. Loskouski meets whatever "minimum standards as may be established by statute" he will be entitled to receive an appointment with Cal/OSHA and the appropriate benefits as set out in Government Code section 19994.

The judgment of the superior court denying the petition for a writ of mandate is reversed. We remand the matter to the superior court with instructions for it to issue a writ of mandate directing the Personnel Board to promulgate within a reasonable period of time set by the court a special rule providing for persons who previously performed private sector enforcement under Fed/OSHA to continue in their positions in state civil service. Once such a rule is issued by the board the superior court shall issue an alternative writ of mandate directing the Personnel Board to reinstate Mr. Loskouski as a Cal/OSHA employee or to show cause why it has not done so.

Perley, J., and Reardon, J., concurred.

---

[2]"When the state takes over and there is transferred to it a function from any other public agency, the department may determine the extent, if any, to which the employees employed by the other public agency on the date of transfer are entitled to have credited to them in the state civil service, seniority credits, accumulated sick leave, and accumulated vacation because of service with the former agency. Granting of seniority credit under this section is subject to review by the State Personnel Board pursuant to Section 19816.2. The department shall limit that determination to the time any transferred employees were employed in the specific function or a function substantially similar while in the former agency and the seniority credits and accumulated sick leave and accumulated vacation shall not exceed that to which each employee would be entitled if he or she had been continuously employed by the State of California. This section is applicable to any function heretofore transferred to the state, whether by state action or otherwise, as well as to any future transfers of a function to the state, whether by state action or otherwise." (Gov. Code, § 19994.)