[No. 58442-7.    En Banc.    October 8, 1992.]

THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant*, v. DIRT & AGGREGATE,
INC., *Respondent*.

*Kenneth O. Eikenberry, Attorney General,* and *Elliott S. Furst, Assistant,* for appellant.

*Allen, Kilmer, Yazbeck, Chenoweth & Voorhees, P.C.,* by *Barry W. Dod,* for respondent.

DURHAM, J. — The Department of Labor and Industries (Department) seeks reversal of a ruling denying its attempts to enforce the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17, within the boundaries of Mount Rainier National Park (park). The Superior Court, in affirming a decision of the Board of Industrial Insurance Appeals (Board), found that the Department lacked jurisdiction to operate within this federal enclave. We also affirm.

The parties stipulate to the basic facts. Dirt & Aggregate was a subcontractor on a United States Department of Transportation contract for road construction within the park. All work anticipated and performed under the general contract was "100% within the boundaries of the Park, and 100% funded by the federal government." Clerk's Papers, at 13. At no time did Dirt & Aggregate operate any equipment or perform any construction work outside the park's boundaries.

Nonetheless, on April 20, 1987, acting under WISHA, the Department conducted noise and air testing at the Dirt & Aggregate jobsite. The testing uncovered eight alleged violations of the Department's noise and respiratory regulations. As a result of these violations, the Department issued a citation to the company.

The Department conducted this testing solely under the authority of WISHA. WISHA was adopted pursuant to the Federal Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651, which authorizes states to develop "little-

OSHAs" upon satisfaction of several conditions and approval by the United States Secretary of Labor. 29 U.S.C. § 667. The Secretary of Labor approved WISHA in a May 28, 1975, operational status agreement.

In a hearing on the WISHA citation, Dirt & Aggregate challenged (among other things) the Department's jurisdiction to enforce WISHA within the park. The hearing officer ruled that issuance of the citation "was appropriate". Clerk's Papers, at 65. The company properly appealed this determination to the Board where Industrial Appeals Judge Wayne N. Araki issued a particularly well-reasoned proposed decision and order finding that the Department lacked authority and jurisdiction to enforce WISHA within the park. The Department filed a petition for review of Judge Araki's decision, but the Board denied this petition and adopted the proposed order as its final order.

The Department sought review of the Board's decision with the Lewis County Superior Court. Judge H. John Hall affirmed the Board's order, finding that:

> The cession of jurisdiction over the lands comprising the Park by the State of Washington to the federal government for purposes of performing a [f]ederal function occurred prior to the State's enactment of WISHA and did not include a reservation as to enforcement of industrial safety and health laws, thereby leaving no authority in the state government to thereafter legislate such laws over the ceded land.

Clerk's Papers, at 14. Moreover, the Superior Court found that no specific congressional authorization or permission from the Secretary of Labor existed allowing Washington to enforce WISHA within the park's boundaries. As a result, "[t]he State does not have authority and is without jurisdiction to enforce WISHA on employer activities that are entirely within the confines of the Park." Clerk's Papers, at 15. This court accepted direct review of the trial court's decision.

The park was established by an act of Congress in 1899. 16 U.S.C. § 91. In 1901, to facilitate this new park, the Washington Legislature ceded exclusive jurisdiction over all park lands to the federal government:

Exclusive jurisdiction shall be, and the same is hereby ceded to the United States over and within all the territory that is now or may hereafter be included in that tract of land in the state of Washington, set aside for the purposes of a national park, and known as the Rainier National Park[.]

RCW 37.08.200 (formerly Rem. Rev. Stat. § 8110). From this grant of exclusive jurisdiction, the Legislature saved only the right to serve process and collect taxes within the park boundaries. RCW 37.08.200; *State v. Rainier Nat'l Park Co.*, 192 Wash. 592, 593, 74 P.2d 464 (1937). This cession was accepted by Congress in 1916, whereby the federal government assumed "[s]ole and exclusive jurisdiction" over the park subject to Washington's specific reservations. 16 U.S.C. § 95.

██ ██ Cession is one method whereby a state can relinquish exclusive jurisdiction to the federal government. *Ryan v. State*, 188 Wash. 115, 126, 61 P.2d 1276 (1936), *aff'd sub nom. Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186, 82 L. Ed. 187, 58 S. Ct. 233 (1937). When territory is so acquired, the federal constitution gives Congress the power:

[t]o exercise *exclusive legislation* in all cases whatsoever, . . . over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings . . .[.]

U.S. Const. art. 1, § 8; *see generally* H. Allen Irish, *Enforcement of State Environmental Crimes on the Federal Enclave*, 133 Mil. L. Rev. 249 (1991). Once exclusive jurisdiction is established, the state government loses the power to legislate over the federal enclave.[1] *Paul v. United States*, 371 U.S. 245, 263, 9 L. Ed. 2d 292, 83 S. Ct. 426 (1963); *Rainier Nat'l Park*, 192 Wash. at 594. In effect, the federal enclave is "shielded" from direct state regulation. *Goodyear Atomic*

---

[1]The grant of jurisdiction does not erase pre-existing state laws, but it does end the state's power to amend those laws or pass new ones. *Pacific Coast Dairy, Inc. v. Department of Agriculture*, 318 U.S. 285, 294, 87 L. Ed. 761, 63 S. Ct. 628 (1943); *Rainier Nat'l Park*, 192 Wash. at 594-95. Any pre-existing state laws which offend or interfere with federal jurisdiction are pre-empted under the supremacy clause.

*Corp. v. Miller*, 486 U.S. 174, 180, 100 L. Ed. 2d 158, 108 S. Ct. 1704 (1988).

The scope of federal jurisdiction over an area is governed by the terms of the cession agreement. *State v. Lane*, 112 Wn.2d 464, 469, 771 P.2d 1150 (1989). Here, there is no doubt that Washington intended to convey and the federal government intended to receive *exclusive* jurisdiction over the park.[2] *See* RCW 37.08.200; 16 U.S.C. § 95.

Once the federal government attains exclusive jurisdiction, state regulation of activities within the federal enclave may resume only with the express permission of Congress. Where " 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation." *Hancock v. Train*, 426 U.S. 167, 179, 48 L. Ed. 2d 555, 96 S. Ct. 2006 (1976) (quoting *Mayo v. United States*, 319 U.S. 441, 87 L. Ed. 504, 63 S. Ct. 1137, 147 A.L.R. 761 (1943)). The test for determining a congressional grant of jurisdiction is narrow and specific. As the Supreme Court has consistently held, "an authorization of state regulation is found only when and to the extent there is *'a clear congressional mandate,' 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.'* " (Footnotes omitted. Italics ours.) *Hancock*, 426 U.S. at 179; *accord EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 211, 48 L. Ed. 2d 578, 96 S. Ct. 2022 (1976); *West River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 714-15 (8th Cir. 1990). Thus, we must determine whether there is any specific and unambiguous grant by the Congress allowing Washington to enforce WISHA within the boundaries of the park.

The Department points to two potential congressional grants of authority — OSHA and the WISHA operational

---

[2]The mere reservation of some limited jurisdictional rights does not defeat federal jurisdiction. *Lane*, at 470. Moreover, federal jurisdiction is not diminished when private parties are allowed to operate within the enclave. *See Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 372-73, 11 L. Ed. 2d 782, 84 S. Ct. 857 (1964).

status agreement with the Secretary of Labor. First, the Department claims that general language from OSHA can be read to support concurrent state jurisdiction. It points to language setting out the need for "an effective enforcement program". 29 U.S.C. § 651(b)(10); Brief of Appellant, at 19. According to the Department, effective enforcement is thwarted unless Washington is allowed to enforce WISHA within the park.

■ This language, however, does not constitute a specific and unambiguous grant of authority. The need for "effective enforcement" cannot be transformed into a congressional directive for states to act outside their normal legislative boundaries. Moreover, the Department's participation in park activities is not a necessary precondition for effective enforcement. Federal law, OSHA itself, applies to the park and provides similar protections for worker safety.[3] *See generally* 29 U.S.C. § 651 *et seq.*

We find nothing else in the OSHA statute which expands state power beyond its normal legislative jurisdiction. *See* 29 U.S.C. § 651 *et seq.* Although some provisions of the act contemplate state participation in ensuring safe working environments, those sections do not empower a state to regulate in federal enclaves. Absent a specific provision, the Department's attempt to imply a grant of authority from general language in OSHA is simply not sufficient to support state regulation. *See Hancock*, 426 U.S. at 183-86.

Second, the Department claims that language in the WISHA operational status agreement provides jurisdiction for enforcing state safety laws within the park. It points to section 4 of the agreement which states:

4. Federal responsibility under the Act will continue to be retained and/or exercised *among other things* with regard to:
(a) Responding to complaints filed with the Occupational Safety and Health Administration under Section 11(c) of the Act.

---

[3] Any interest Washington might have in regulating activity on a federal enclave is diminished where alternate laws and channels of enforcement exist. *Confederated Tribes of Colville Reservation v. Washington*, 938 F.2d 146, 149 n.2 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1704 (1992).

   (b) Enforcement of Federal Standards promulgated subsequent to this Agreement where necessary to protect employees as in the case of emergency temporary standards until such time as the State shall have adopted equivalent standards.

   (c) Enforcement of Federal occupational safety and health standards contained in the issues covered by 29 CFR 1910 Subpart B . . ..

(Italics ours.) *See* 29 C.F.R. § 1952.122 (1991). The Department also relies upon later amendments to this agreement where "jurisdictional and enforcement authority are hereby relinquished back to federal OSHA" for military and certain Indian reservations. *See* 29 C.F.R. § 1952.122. According to the Department, under the agreement the State is given authority to enforce WISHA in all areas except those excluded by the agreement; the language of the amendments verifies this broad grant of jurisdiction.

   ■ We are not persuaded. The language in the agreement does not constitute a specific and unambiguous grant of authority. See Clerk's Papers, at 169. It does not purport to define the universe of exclusive federal jurisdiction and actually contains language ("among other things") demonstrating an opposite intent. Likewise, the amendments fail to support the Department's position. There is no indication that OSHA lacked this authority to begin with or that the State had jurisdiction over either military or Indian reservations. The federal government may have entered into these amendments simply to clarify its understanding with the Department.[4]

   In the alternative, the Department points to RCW 51.12-.060 which applies the Industrial Insurance Act "and related safety laws . . . to all lands and premises owned or held by the United States". According to appellant, because the workers'

---

[4]Regardless of the language in the agreement, it is highly questionable that the Secretary of Labor has the *power* to independently allow states to enforce workers' safety laws within a federal enclave. As the Supreme Court has remarked, "[i]t is by no means sure that a federal agency making an oil and gas lease could waive the Government's exclusive jurisdiction over a federal reservation". *Humble Pipe*, 376 U.S. at 374. We do not reach this issue because the agreement itself fails to support the Department's contentions.

compensation laws apply to federal enclaves,[5] it is proper to apply WISHA to those same enclaves.

However, such a line of reasoning skirts the ultimate question of congressional authorization. Even if Washington intended to apply WISHA to federal enclaves, under the supremacy clause, federal law pre-empts conflicting state legislation. *See Gade v. National Solid Wastes Mgt. Ass'n*, ___ U.S. ___, 120 L. Ed. 2d 73, 112 S. Ct. 2374 (1992) (OSHA pre-empts all state occupational safety and health laws where a federal standard has been promulgated and no state plan authorizes action.); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 100 L. Ed. 2d 158, 108 S. Ct. 1704 (1988) (allowing some indirect application of state workers' safety laws through workers' compensation award scheme, but disapproving direct application of safety laws). Here, there is no conflict because the Legislature never intended for WISHA to apply to federal enclaves. The WISHA statute applies only to "all work places within this state subject to the legislative jurisdiction of the state of Washington." RCW 49.17.230.

The decision that the Department of Labor and Industries lacks jurisdiction to enforce WISHA within Mount Rainier National Park is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, GUY, and JOHNSON, JJ., concur.

---

[5] 40 U.S.C. § 290.