[No. B122436. Second Dist., Div. Six. Feb. 23, 2000.]

WALTER TAYLOR, Plaintiff and Appellant, v.
LOCKHEED MARTIN CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Lascher & Lascher, Wendy C. Lascher and Gabriele Mezger-Lashly for Plaintiff and Appellant.

Curiale Dellaverson Hirschfeld Kelly & Kraemer, Joel P. Kelly and Leonora M. Schloss for Defendants and Respondents.

**OPINION**

**COFFEE, J.**—An employee of a civilian contractor operating on a federal military enclave brought a lawsuit for wrongful termination. We conclude

that all but one of his state law claims are barred by article I, section 8, clause 17 of the United States Constitution.

## FACTS AND PROCEDURAL BACKGROUND

Respondent Lockheed Martin Corporation (Lockheed) is a civilian contractor that provides launch operations services at Vandenberg Air Force Base (Vandenberg). Appellant Walter Taylor (Taylor), who is an African-American, was employed by Lockheed as a rocket engine mechanic for almost 15 years. In 1996, he filed a complaint with the Division of Occupational Safety and Health of the State Department of Industrial Relations (Cal/OSHA). Taylor became ill after using the chemical trichloroethane and alleged that rubber gloves provided to him by Lockheed were inadequate to prevent that chemical from penetrating the skin. Cal/OSHA issued two citations against Lockheed after an investigation.

Taylor was placed on an unpaid leave of absence in September of 1996. He was then constructively terminated when Lockheed placed him on an unpaid suspension without a definite return date. He claims this action was racially motivated and was in retaliation for his complaint to Cal/OSHA. Lockheed has maintained that Taylor was suspended due to unresolved issues relating to his work performance.

Taylor filed a complaint alleging four causes of action against Lockheed and his supervisors there, Cal Moser and Raymond Harris (collectively, defendants): (1) wrongful termination in violation of the public policy found in Labor Code sections 1102.5 and 6310; (2) violation of Labor Code sections 1102.5 and 6310; (3) race discrimination in employment in violation of Government Code section 12940; and (4) wrongful termination in violation of public policy under the California Constitution, article I, section 8 (prohibiting race discrimination).

Defendants moved for summary judgment on the ground that Vandenberg has been a federal enclave since 1943 and is under the legislative jurisdiction of the federal government, subject to limitations not here relevant. They argued that a wrongful termination claim that arises within a federal enclave is governed by federal law and by any state law that was in effect when the federal government assumed legislative jurisdiction. Defendants argued that Taylor's claims arose solely under state law enacted after 1943 and were not cognizable.

The trial court agreed that Vandenberg was a federal enclave, found that Taylor's "predominant job situs" was on that enclave, and concluded that the

state law claims in Taylor's complaint were barred. It treated the motion as one for judgment on the pleadings, granting it with leave to amend so that Taylor could plead federal causes of action, state causes of action based on California law in effect at the time Vandenberg became an enclave, or state causes of action based on conduct arising outside the federal enclave. Taylor did not file an amended complaint and judgment was entered in favor of defendants.

## DISCUSSION

## I.

### Federal Enclaves

■ A federal enclave is land over which the federal government exercises legislative jurisdiction. (*Kelly v. Lockheed Martin Services Group* (D.P.R. 1998) 25 F.Supp.2d 1, 3.) The federal power over such enclaves emanates from article I, section 8, clause 17 of the United States Constitution, which gives Congress the power "[t]o exercise exclusive legislation in all cases whatsoever" over the District of Columbia and "to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings."

An enclave is created when the federal government purchases land within a state with the state's consent, which may be conditioned on the retention of state jurisdiction consistent with the federal use. (*Paul v. United States* (1963) 371 U.S. 245, 264-265 [83 S.Ct. 426, 437-438, 9 L.Ed.2d 292, 304-305].) Unlike those situations where the United States has a mere proprietary interest in a piece of land, the voluntary cession of land by a state to the federal government is an actual transfer of sovereignty. (*Vincent v. General Dynamics Corp.* (N.D.Tex. 1977) 427 F.Supp. 786, 795; see also *People v. Crusilla* (1999) 77 Cal.App.4th 141, 148-150 [91 Cal.Rptr.2d 415].)

## II.

### Standard of Review

■ Before addressing whether Taylor's claims are barred because they arose on a federal enclave, we consider a procedural issue presented by the trial court's decision to treat Lockheed's summary judgment motion as a motion for judgment on the pleadings. (See *Yancey v. Superior Court* (1994)

28 Cal.App.4th 558, 561-562 [33 Cal.Rptr.2d 777].) We must initially determine the propriety of this action, because it affects the scope of our review.

When ruling upon a motion for judgment on the pleadings, the court may consider only the face of the pleadings and matters that are a proper subject of judicial notice. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) When a motion for summary judgment challenges the sufficiency of the pleadings rather than the evidence support-ing the allegations contained therein, it is tantamount to a motion for judgment on the pleadings and may be treated as such by the trial court. (*Hand v. Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847, 1853 [29 Cal.Rptr.2d 258].) The practical effect of this procedure is that in granting judgment on the pleadings, the trial court may give the plaintiff the oppor-tunity to amend the complaint even when no motion to amend has been filed. (See *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 216 [32 Cal.Rptr.2d 388]; *Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 647 [9 Cal.Rptr.2d 216].)

In this case, the trial court's written ruling states that it was electing to treat the summary judgment motion as one for judgment on the pleadings because "[Taylor's complaint] coupled with facts of which the court may take judicial notice discloses the problem of applying state law within a federal enclave." This is incorrect because extrinsic evidence was needed to establish two essential facts supporting the ruling—that Taylor actually worked at Vandenberg and that his claims arose on the base. (Cf. *Saltarelli & Steponovich v. Douglas* (1995) 40 Cal.App.4th 1, 5 [46 Cal.Rptr.2d 683] [declaration not proper subject of judicial notice].)

We therefore treat the court's order as one granting summary judgment and review it de novo. (*Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 594 [77 Cal.Rptr.2d 752].) This approach is appropriate because other language in the written ruling makes it clear the trial court found no triable issue of fact as to whether the claims arose on a federal enclave. It simply erred in concluding that the evidence offered in support of summary judg-ment was also subject to judicial notice, and thus could be considered as part of a motion for judgment on the pleadings so that Taylor could be given the opportunity to amend.

### III.

*There is No Triable Issue of Fact That Taylor's Claims
Arose on a Federal Enclave*

The land on which Vandenberg is located was purchased by the United States Department of the Army in 1941 and became the Camp Cooke

Military Reservation. The United States Government accepted jurisdiction over the property in January of 1943, and the base was transferred to the Air Force in 1957. (*Curnutt v. Holk* (1964) 230 Cal.App.2d 580, 582, fn. 2 [41 Cal.Rptr. 174]; see also *United States v. Barnes* (S.D.Cal. 1959) 175 F.Supp. 60, 61 [noting exclusive jurisdiction of federal government over Camp Cooke]; former 50 U.S.C. § 175, now 40 U.S.C. § 255.)

Former Political Code section 34, which was in effect when the United States Government accepted jurisdiction over the base, provided, "The Legislature consents to the purchase or condemnation by the United States of any tract of land within this State for the purpose of erecting forts, magazines, arsenals, dockyards, and other needful buildings," with certain reservations of authority to the state for the service of process and taxation, not here material. (Stats. 1939, ch. 710, § 1, p. 2231.) This blanket consent to federal jurisdiction rendered Vandenberg a federal enclave.[1]

The evidence supporting defendants' summary judgment motion included the declaration of defendant Harris, who had been Taylor's supervisor. This declaration established that Taylor had been assigned to work in building 8401A, which was located in an area within the Vandenberg enclave.[2] A declaration by Nieves Dominguez, a human resources manager at Lockheed's Vandenberg operations, established that the decision to discipline Taylor and the implementation of that discipline occurred on the enclave, in the human resources department located in the same building. This evidentiary showing shifted the burden to Taylor to present evidence that his causes of action arose outside the enclave. (Code Civ. Proc., § 437c, subds. (n)(1) & (o)(2); *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 38 [90 Cal.Rptr.2d 15].)

---

[1]Political Code section 34 was repealed later in 1943 and its substantive provisions were continued in, inter alia, former Government Code sections 111, 113, and 114. Section 111 provided a blanket grant of consent by the state to the purchase or condemnation of lands within California for military purposes. Section 113 ceded exclusive jurisdiction over such lands to the federal government, excepting state laws relating to crime, service of process and taxation. Section 114 ceded exclusive jurisdiction to the federal government over all land held for military purposes, subject to state laws regarding service of process and taxation. (Stats. 1943, ch. 134, § 113, p. 898; see *Paul v. United States, supra,* 371 U.S. at pp. 265-266 & fns. 31-35 [83 S.Ct. at pp. 438-439, 9 L.Ed.2d at pp. 305-306].) These statutes were repealed by Statutes 1947, chapter 1532, section 3, page 3164, and their subject matter incorporated into Government Code section 126.

[2]The evidence presented by Lockheed shows that Taylor worked in an area of the base that was part of Vandenberg when it became an enclave in 1943. The record does not reveal whether other tracts of land have been acquired as base property since that time, or whether such tracts of land, if any, are under the exclusive jurisdiction of the federal government. All references to "Vandenberg" in this opinion are to the areas of the base where Taylor's claims arose, which are part of the federal enclave.

Taylor's opposition papers did not present any evidence sufficient to raise a triable issue of fact on this point. In his own declaration, Taylor acknowledged that he reported to defendants Moser and Harris, and that he had worked at Vandenberg for Lockheed and its predecessor entities for 14 years. His declaration stated that his work activity "was not exclusively at Building 8401," but did not contain additional details or state that it was off the base. Taylor also failed to present any evidence suggesting that the disciplinary measures against him occurred off the base.

Taylor argues for the first time on appeal that his claims did not arise on the Vandenberg enclave, because he had been placed on paid suspension and was not working on the base when he was terminated. The fortuity of a paid suspension before his termination does not mean that he ever worked for Lockheed outside the enclave or that his employment claims arose elsewhere. (See *Osburn v. Morrison Knudsen Corp.* (E.D.Mo. 1997) 962 F.Supp. 1206, 1209.)

As the employee of a contractor operating on the enclave, Taylor's claims are governed by the enclave's law, rather than by state law. (*Hancock v. Train* (1976) 426 U.S. 167, 178-180 [96 S.Ct. 2006, 2012-2013, 48 L.Ed.2d 555, 564-566]; *Kelly v. Lockheed Martin Services Group, supra*, 25 F.Supp.2d at p. 3; *Snow v. Bechtel Const. Inc.* (C.D.Cal. 1986) 647 F.Supp. 1514, 1521.) We must therefore determine the scope of the law within the Vandenberg enclave.

## IV.

### *The Applicable Enclave Law*

When an area becomes a federal enclave, Congress assumes the power of legislation over that area. Federal law thus applies, although not "every vestige of the laws of the former sovereignty must vanish." (*James Stewart & Co. v. Sadrakula* (1940) 309 U.S. 94, 99 [60 S.Ct. 431, 433-434, 84 L.Ed. 596, 600, 127 A.L.R. 821].)

State law which is in effect at the time of the cession, and which is not inconsistent with federal law, will continue to apply within the enclave unless it is abrogated by Congress. (*James Stewart & Co. v. Sadrakula, supra*, 309 U.S. at p. 99 [60 S.Ct. at pp. 433-434, 84 L.Ed. at p. 600]; see also *Pacific Coast Dairy v. Dep't.* (1943) 318 U.S. 285, 294-296 [63 S.Ct. 628, 630-631, 87 L.Ed. 761, 766-767]; *Celli v. Shoell* (10th Cir. 1994) 40 F.3d 324, 328, fn. 4; *Snow v. Bechtel Const. Inc., supra*, 647 F.Supp. at p. 1521.) State law which did not exist at the time of cession will also extend

to the enclave when the state regulation has been expressly permitted by Congress. (*Goodyear Atomic Corp. v. Miller* (1988) 486 U.S. 174, 180 & fn. 1 [108 S.Ct. 1704, 1709, 100 L.Ed.2d 158, 168].)

■ Taylor argues that in addition to the principles stated above, subsequently enacted state law should apply within an enclave whenever it does not conflict with federal law. He relies on a line of authorities recognizing that "in the area of the rights of federal enclave residents to state benefits, there has been a trend . . . to hold that the exclusive jurisdiction of Congress does not deprive enclave residents of benefits which would otherwise be theirs." (*In re Terry Y.* (1980) 101 Cal.App.3d 178, 181 [161 Cal.Rptr. 452].) Such benefits include the right to vote (*Evans v. Cornman* (1970) 398 U.S. 419 [90 S.Ct. 1752, 26 L.Ed.2d 370]), the right to state welfare benefits (*Board of County Com'rs of Co. of Arapahoe v. Donoho* (1960) 144 Colo. 321 [356 P.2d 267]), and the privilege of using public schools (*DuPont-Fort Lewis Sch. Dist. v. Clover Park Sch. Dist.* (1964) 65 Wn.2d 342 [396 P.2d 979]).

The ability to bring a civil action against one's employer under state law is not a "benefit" in the same sense as voting, public school attendance, or eligibility for welfare payments. The issue before us is governed by those authorities that more particularly address employment claims arising on federal enclaves. (E.g., *Kelly v. Lockheed Martin Services Group, supra,* 25 F.Supp.2d at p. 3 [employee's discrimination claim against private employer under Puerto Rican law dismissed when claim arose on federal enclave]; *Osburn v. Morrison Knudsen Corp., supra,* 962 F.Supp. at pp. 1208-1209 [state age discrimination claims against private employer on federal enclave dismissed]; *Snow v. Bechtel Const. Inc., supra,* 647 F.Supp. at p. 1521 [wrongful termination claims against private employer on federal enclave dismissed].)

Taylor may therefore assert claims authorized by federal law, by any California law not in conflict with federal law that existed when Vandenberg became a federal enclave in 1943, and by subsequently enacted state law to the extent authorized by Congress. We consider each cause of action to determine whether it falls within one of these categories.

## A. *FEHA Claim*

Taylor's third cause of action alleges racial discrimination in violation of Government Code section 12940. This claim is not cognizable within the Vandenberg enclave because it is based solely on a state statutory scheme which did not exist in 1943.

Government Code section 12940 is a part of the Fair Employment and Housing Act (FEHA) and was not enacted until 1980. (Stats. 1980, ch. 992, § 4, pp. 3148-3149.) The predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959. (Former Lab. Code, § 1410 et seq., added by Stats. 1959, ch. 121, § 1, pp. 1999-2005.) Taylor does not assert that any congressional action since 1943 has authorized state FEHA claims against employers operating on federal enclaves within California.

Taylor was not without a statutory remedy for his racial discrimination claim. Under federal law, he could have pursued an action under title VII. (42 U.S.C. § 2000e-2(a); *Yellow Freight System, Inc. v. Donnelly* (1990) 494 U.S. 820, 826 [110 S.Ct. 1566, 1570, 108 L.Ed.2d 834, 841].) He did not do so, and did not amend his complaint to state a cognizable claim for racial discrimination when given the opportunity by the trial court. The third cause of action alleging a violation of FEHA was properly dismissed.

### B. *Statutory Whistleblower Claim*

Taylor's second cause of action is a statutory claim for violation of the whistleblower provisions of Labor Code sections 1102.5 and 6310.[3] Lockheed argues that this cause of action is also barred because, like Taylor's FEHA claim, the relevant statutes did not exist when Vandenberg became an enclave in 1943.

Regardless of the status of California law in 1943, congressional action since that time authorizes Taylor's statutory claim under Labor Code section 6310. By enacting the federal Occupational Safety and Health Act (OSHA)

---

[3]Labor Code section 1102.5 was enacted in 1984 and provides in part: "(b) No employer shall retaliate against an employee for disclosing information to a government . . . agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation." (Stats. 1984, ch. 1083, § 1, p. 3698.)

Labor Code section 6310 was enacted in 1973 and was amended to specify that employees had a private right of action in 1974. (Stats. 1973, ch. 993, § 59, p. 1930; Stats. 1974, ch. 1284, § 9, p. 2782.) It provides in part:

"(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to the [Division of Occupational Safety and Health] . . . [¶] . . .

"(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because such employee has made a bona fide oral or written complaint to the division, . . . his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. . . ." (Lab. Code, § 6310.)

and approving the California Occupational Safety and Health Act as a state-OSHA plan, the federal government has "clearly and unambiguously" authorized California to enforce its worker safety laws in areas under federal jurisdiction, when, as here, the federal agency does not "actively exercise" that jurisdiction. (See *Hancock v. Train*, *supra*, 426 U.S. at pp. 178-180 [96 S.Ct. at pp. 2012-2013, 48 L.Ed.2d at pp. 564-566]; 29 U.S.C. §§ 651 et seq., 667(b); Lab. Code, § 6303, subd. (a).)

Congress enacted OSHA in 1970 for the purpose of setting a nationwide "floor" on workplace safety standards. (*United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 772 [187 Cal.Rptr. 387, 654 P.2d 157]; *Loskouski v. State Personnel Bd.* (1992) 4 Cal.App.4th 453, 455 [5 Cal.Rptr.2d 488].) The statute authorized the Secretary of Labor to promulgate and enforce national standards and established the federal Occupational Safety and Health Administration (Fed/OSHA) to administer OSHA. OSHA allows a state to enforce its own safety standards after a state plan has been approved by Fed/OSHA. (*Ibid.*; 29 U.S.C. §§ 655, 667(a)-(e).)

The California Occupational Safety and Health Act was enacted in 1973 and approved by Fed/OSHA in 1975. (Lab. Code, § 6300 et seq.; *Loskouski v. State Personnel Bd.*, *supra*, 4 Cal.App.4th at p. 456.) It extends to any "place of employment" within the state, which is defined as "any place, and the premises appurtenant thereto, where employment is carried on, except a place the health and safety jurisdiction over which is vested by law in, *and actively exercised by*, any state or federal agency other than the division." (Lab. Code, § 6303, subd. (a), italics added; see also § 6307.)

In October of 1989, Fed/OSHA approved a revised plan under which California would regulate worker safety issues. (*Loskouski v. State Personnel Bd.*, *supra*, 4 Cal.App.4th at pp. 457-458.) That plan provides in relevant part, "The U.S. Department of Labor will continue to exercise authority, among other things, with regard to: [¶] . . . [¶] . . . Private contractors on Federal installations *where the Federal agency claims exclusive Federal jurisdiction, challenges State jurisdiction and/or refuses entry to the State*; such Federal enforcement will continue at least until the jurisdictional question is resolved at the National level between OSHA and the cognizant Federal agency." (29 C.F.R. § 1952.172(b)(4) (1999), italics added.)

The Secretary of Labor, as authorized by Congress, has thus approved a Cal/OSHA plan that allows state safety regulation of federal enclaves *when the responsible federal agency does not claim exclusive jurisdiction*. Here it is undisputed that Air Force officials allowed Cal/OSHA inspectors to come onto the base in response to Taylor's complaints. As an area within the state

where a federal agency did not "actively exercise" its jurisdiction, Vandenberg was a "place of employment" subject to California's occupational safety laws. (Lab. Code, §§ 6303, subd. (a), 6307.)[4]

Consistent with the federal regulation approving the Cal/OSHA plan, the state possessed concurrent jurisdiction over worker safety issues by virtue of the Air Force's acquiescence to state action. (29 C.F.R. § 1952.172(b)(4) (1999).) A private cause of action for retaliatory discharge under Labor Code section 6310 is part of California's statutory scheme for occupational safety. (29 C.F.R. § 1952.170(c) (1999) [California's plan includes "protection of employees against discharge or discrimination in terms and conditions of employment"].) Though section 6310 provides for an individual claim, it concerns "protection of employees against retaliatory dismissal for conduct which, in light of the statutes, deserves to be encouraged, rather than inhibited." (*Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 298 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].)

Lockheed argues that the Secretary of Labor does not have the authority to "waive" federal jurisdiction by approving a state-OSHA plan, citing *Humble Pipe Line Co. v. Waggonner* (1964) 376 U.S. 369, 374 [84 S.Ct. 857, 860-861, 11 L.Ed.2d 782, 786-787]. That decision is not controlling. In *Humble Pipe*, the court questioned whether the Secretary of the Interior could waive exclusive federal jurisdiction by issuing an oil and gas lease of Air Force lands to a private party. By contrast, Congress has expressly delegated various legislative duties to the Secretary of Labor under the federal OSHA law. (See *Dole v. East Penn Mfg. Co., Inc.* (3d Cir. 1990) 894 F.2d 640, 641, fn. 1; *Industrial Union Department, AFL-CIO v. Hodgson* (D.C. Cir. 1974) 499 F.2d 467, 474-475 [162 App.D.C. 331].) One such duty is the evaluation and approval of qualifying state plans. (29 U.S.C. § 667(c); *Florida Citrus Packers v. State of Cal.* (N.D.Cal. 1982) 549 F.Supp. 213, 216 [describing California's approved state plan as "congressional" authorization]; but see *Dept. of Labor v. Dirt & Aggregate, Inc.* (1992) 120 Wash.2d 49, 54 [837 P.2d 1018, 1022].) The Secretary of Labor's approval of the California OSHA agreement is the equivalent of congressional action for these purposes.

---

[4] It is unclear from the record why state officials investigated the safety claim. Lockheed argues that because California had enacted workplace safety laws in 1937, before Vandenberg became an enclave, state inspectors were authorized to issue citations as part of the enclave's law. We express no opinion as to whether the state inspectors would have been authorized to investigate if the federal authorities had objected.

Taylor may therefore pursue the statutory claim for retaliatory discharge contained in his second cause of action.[5] This claim is based on a state law which, under the circumstances, applies within the Vandenberg enclave. Because he is entitled to seek relief under Labor Code section 6310, we need not address whether he is also entitled to pursue a claim under Labor Code section 1102.5. (*Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 110 [80 Cal.Rptr.2d 60].)

### C. *Wrongful Termination in Violation of Public Policy*

Taylor's remaining two causes of action are state common law claims for wrongful termination in violation of the public policies prohibiting racial discrimination and protecting whistleblowers. Both are barred, because California courts did not recognize such claims when Vandenberg became a federal enclave.

Our Supreme Court first recognized that an at-will employee may bring a tort cause of action for wrongful termination in violation of public policy in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 888 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) Appellate decisions predating *Tameny* had suggested that an at-will employee could maintain a wrongful termination claim (*Petermann v. International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188 [344 P.2d 25]), but Taylor identifies no cases recognizing this cause of action as early as 1943. (Cf. *Celli v. Shoell* (D. Utah 1995) 995 F.Supp. 1337, 1341-1346; *Orlovetz v. Day & Zimmerman, Inc.* (1993) 18 Kan.App.2d 142 [848 P.2d 463] [common law claim that was not recognized by state courts when federal enclave was created does not apply to claims arising on enclave].)

## V.

### *Contract Between Lockheed and the Air Force*

■ In supplemental briefing submitted after oral argument, Taylor asks us to take judicial notice of the contract between Lockheed and the Air Force which governs the project to which Taylor was assigned. Taylor argues that this contract requires us to apply California law to his claims against Lockheed. He relies on paragraph 3.9.3.5.2 of an attachment to that contract,

---

[5]We also note that this claim may be properly litigated in state court. State courts generally have subject matter jurisdiction over claims arising in federal enclaves within their borders. Under traditional choice of law principles, the state court is required to apply the enclave's law to such actions. (*Hansford v. District of Columbia* (1993) 329 Md. 112, 130-131 [617 A.2d 1057, 1065-1066].) In this case, the enclave's law includes Labor Code section 6310.

which states: "Operational Safety—The launch site operational safety organizations are responsible for implementation of an industrial safety program that meets the requirements of federal *and/or* state requirements to ensure that personnel and property are protected." (Italics added.)

The contract was not included in Taylor's opposition to the motion for summary judgment. But assuming we may consider it for the first time on appeal, the cited provision does not support Taylor's assertion that Lockheed was required to follow state safety regulations within an enclave where federal safety regulations applied. The clause is phrased in the disjunctive: "federal and/or state requirements." "Such use of the word 'or' . . . indicates an intention to . . . designate alternative or separate categories. [Citations.]" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) The most reasonable interpretation of the contractual language is that Lockheed was required to comply with state *or* federal safety standards, whichever applied within a particular geographical area.

The contract also says nothing about the civil remedies available to Lockheed employees assigned to the project. Lockheed agreed to adhere to certain occupational safety standards, but this safety provision does not explicitly designate the choice of law to be applied to employment-related claims. (Contrast *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 462, 471 [11 Cal.Rptr.2d 330, 834 P.2d 1148] [choice of law provisions requiring contract to be "governed by" Hong Kong law was enforceable]; *Hambrecht & Quist Venture Partners v. American Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1538-1544 [46 Cal.Rptr.2d 33] [provision stating the contract " 'shall be governed by and construed in accordance with the laws of the State of Delaware' " required California court to apply Delaware statute of limitations].)

Despite these observations, we need not resolve whether Lockheed employees may assert state law claims as beneficiaries of the contract. The contractual provision cited by Taylor concerns only occupational safety requirements. We have decided for other reasons that Taylor may pursue his statutory claim for retaliatory discharge under Labor Code section 6310, which is a part of California's occupational safety scheme. Taylor's remaining causes of action for racial discrimination and wrongful termination in violation of public policy are not part of California's occupational safety laws and are not even arguably covered by the contractual language.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The trial court is directed to vacate its order dismissing the action and to enter a new order

granting summary judgment in Lockheed's favor only as to the first, third and fourth causes of action.

The parties shall bear their own costs.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied March 22, 2000.